UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE:  THE MATTER OF THE *EX PARTE*
APPLICATION OF THE RENCO GROUP, INC.
AND THE DOE RUN RESOURCES                    CASE NO.: 22-MC-21115-JAL
CORPORATION FOR AN ORDER TO TAKE
DISCOVERY PURSUANT TO 28 U.S.C. 1782

       Applicants
_____/

### RESPONDENT VICTOR CAREAGA's RESPONSE TO  APPLICANTS' MOTION TO COMPEL TESTIMONY OF VICTOR CAREAGA, FOR SANCTIONS, FOR APPOINTMENT OF A SPECIAL MASTER, AND FOR ADDITIONAL RELIEF

COMES NOW, Victor A. Careaga, in *pro se manner,* (hereinafter as "Careaga")[1] and

hereby submits his Response to the Applicants' Motion to Compel Testimony of Victor Careaga,

for Sanctions, for Appointment of a Special Master, and for Additional Relief, and would state:

    1.  Applicants seek discovery from Careaga on the basis of a U.S.C. 1782 application

to assist Peruvian authorities in a judicial *criminal investigation* that is being pursued in Peru.

    2.  The information being sought from Careaga related to recruiting activities that took

place in the country of Peru involving thousands of Peruvian nationals that are represented by

US law firms and who have brought personal injury claims which are being presently litigated in

consolidated cases before the Eastern District of Missouri ("the Missouri litigation").[2]

    3.  On or about July 31, 2023, counsel for the Applicants filed a Motion for Sanctions

and Remedial Measures on the consolidated cases with the Eastern District of Missouri.[3] *Exh. A*

In support of this motion was the Formalization and Continuation of the Preparatory

---

[1] Careaga would ask this Honorable Court for some latitude concerning the form of the motion and recital of citations, as he has not been engaged in the practice of law for over 10 years.

[2] *A.O.A. et.al. v. Doe Run Resources Corporation, et al.,* case no. 15-cv-44-CDP (CONSOLIDATED) and *J.Y.C.C. et al v. The Doe Run Resources Corporation et al.* case no. 15-cv-01704-RWS

[3] Judge Catherine D. Perry entered an Order denying Applicants' Motion on August 29, 2023.  See *Exh. C*

Investigation Report issued by the Office of the Collective Provincial Prosecutor Specialized Against Organized Crime of Junin dated April 27, 2023 *(Exh. B)* which is the Peruvian tribunal investigating the recruiting concerning the Peruvian nationals participating in the Missouri litigation. The significance of this report cannot be understated. It was confirmation of the *formalization* of the investigatory accusations and resulting criminal charges leveled against Careaga in Peru, i.e., *a member of a criminal organization* - sanctioned in Peru with substantial *prison time* - and being named one of twelve "imputados" by the Peruvian prosecutor.[4]

4.   Upon becoming aware of the Applicants' filing in Missouri, Careaga quickly sought the advice of Peruvian counsel, given the criminal repercussions associated with the newly found criminal proceedings taking place in Peru.  On Tuesday, August 8th, Careaga consulted Peruvian[5] counsel specializing in the area of criminal organization defense and was advised **not** to answer[6] any questions under oath at the deposition scheduled for August 10th because Careaga had yet to receive *any* official notice of the criminal proceedings in Peru against him.

5.   Counsel for the Applicants gives a long dissertation to suggest that Careaga was fully and completely aware of his criminal exposure under Peruvian law for such an extended period of time that he should have taken steps to avoid doing what he did at the deposition.  This is simply not true.  Careaga acted only when he received *written* verification that he had become a target of a formalized criminal investigation in Peru, i.e., an imputado.   Careaga may have *heard* this said in open court, but did not come across anything *in writing* related to this until

---

[4]
   Careaga admittedly first heard being named an imputado by way of the verbal remarks made by opposing counsel at the hearing before the Court on June 15, 2023. However, Careaga did not see written verification of this until seeing a copy of the Applicants' motion filed with the Missouri Court on July 30, 2023.
[5]
   Katherine Milagros Ampuero Meza, Esq.
[6]
   Per Ms. Ampuero's legal advice, Careaga, in his capacity as a criminal "investigado", can invoke constitutional protections afforded to him, which include, but are not limited to, the right to a due process defense, to be given oficial notice of any and all proceedings.

~~seeing the Applicants' motion filed with the Missouri Eastern District on July 31st, 2023.~~

6.   Counsel for the Applicants suggests Careaga has "sandbagged" the Applicants by ~~springing a bogus Peruvian privilege at the time of the deposition and therefore wasting their resources and the Court's.   Truth be said, Careaga sought counsel immediately upon verifying~~ the criminal context he found himself in and it was only at this time that he realized that he ~~could~~ *and should* ~~invoke the constitutional protections afforded to him under the Peruvian~~ Constitution and the Peruvian Penal Code.[7]

# ARGUMENT

**A. Peruvian Constitution does afford Careaga a Privilege to Refuse to Testify in this matter until such time as notice of any and all criminal charges are provided to him pursuant to Peruvian criminal procedural rules.**

As alluded to in paragraph 4, Careaga consulted with a leading practitioner in Peru who ~~specializes in criminal organization defense matters, and was told he would be incriminating~~ himself if he provided testimony under oath at the scheduled deposition of August 10th.[8]

Peru's legislative decree addressing the fight against criminal organizations, states:

> "~~He who promotes, organizes, constitutes or integrates a criminal~~ organization of three or more people" will face a *minimum sentence of eight years, and a maximum sentence of fifteen years in prison*

~~Careaga has yet to obtain a sworn affidavit from Peruvian counsel to support this affirmation, and requests the Court allow additional time to provide same.   In the meantime,~~ a copy of the legislative decree against organized criminal organizations is attached (*Exh.  )*

**B. Careaga was unaware that he could apply and invoke his Peruvian constitutional privileges until only 48 hours prior to his deposition, and did not knowingly waive his right to do so ahead of the deposition.**

---

[7] Copies of Peru's official legal publication NORMAS LEGALES referring to the decree is attached as Exhibit D.

[8] Copies of the NORMAS LEGALES referring to the Code of Criminal Procedure is attached as Exhibit E.

Careaga was not aware that he could invoke Peruvian constitutional due process privileges and refrain from providing information under oath until two days before the scheduled deposition. It was only then that he learned about the degree and severity of the formalized criminal charges brought against him in Peru, and that providing any information at the deposition would incriminate him and be used in the judicial criminal proceedings by the Peruvian authorities.

### C. Careaga did not assert protection under the 5th Amendment of the U.S. Constitution at the time of his deposition as he was not aware that he could invoke this protection for foreign tribunal proceedings.

Since his attendance at the deposition of August 10th, Careaga has learned that he can invoke the protections of the Fifth Amendment of the United States Constitution which

Provides: *No person shall … be compelled in any criminal case to be a witness against himself, nor he deprived of life, liberty, or property, without due process of law, nor shall private property be taken for public use, without just compensation."* [9]

Section 1782 provides in part:
"….a person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of *any legally applicable  privilege"* [10]

Careaga would argue that this protection extends and includes the *privilege against self incrimination.* This said, Careaga must assert this privilege based on his well founded fear and reasonable suspicion that any testimony given under oath would further incriminate him in the existing criminal prosecution against him in Peru.

Recent federal court opinions have addressed a respondent's fear of prosecution abroad when deciding to approve or deny a 1782 application. The U.S. district court for the

---

[9]
   U.S. CONST. amend. V.
[10]
   28 U.S.C. 1782 (a)(1996)                    4

District of New Jersey in *In Re: Petition of the Republic of Turkey for an Order Directing Discovery from  Hamit Cicek Pursuant to 28 U.S.C. 1782,*  denied the Applicant's petition where the Respondent had a well-rounded fear of criminal prosecution in his homeland of Turkey.  The court, citing the U.S. Supreme Court in *Kastigar v. United States,* 406 U.S. 441, 444-5 (1972), noted:

> *"The privilege reflects a complex of our fundamental values and aspirations", and the Supreme Court "has been zealous to safeguard the values which underlie the privilege" Id.*

> *"The privilege afforded not only extends to answers that would in themselves support a {criminal} conviction …*

citing *Hoffman v. United States,* 341 U.S. 479, 486 (1951).

The Court further noted that the privilege applies to testimonial communications, which can include oral testimony as well as document production, where production of documents is both testimonial and incriminating.  Citing *Fisher v. United States,* 425 U.S. 391, 410.

Careaga submits that his legitimate claim of privilege coupled with the criminal formal Accusations he faces in Peru justifies the Court reconsidering its decision to approve the application of the Applicants. It is not a stretch to say that Careaga risks producing evidence that could then be used against him in his pending criminal case in Peru, or used to bring additional criminal charges.

### D. Because Careaga has been formally charged, this Court should preclude or, at the very least, restrict discovery by the Applicants because accusations against Careaga in Peru have turned formal

Section 1782 provides that a federal district court may order a person to give his testimony or statement or to produce documents "for use in a foreign or international tribunal, including criminal investigations conducted *before formal accusation"*

Careaga would argue that the "before formal accusation" language is central to his position moving forward.  Up until April 27, 2013, there were no formal charges issued by the Peruvian tribunal investigating matters on behalf of the Applicants in Peru.  But, on that date, formal charges were issued against a dozen individuals, including Careaga.

Careaga wishes to frame to this Court the issue as follows: whether an Applicant can seek discovery from a person for use in a criminal investigation.  Careaga submits that the "before formal accusation" language has bearing on the Court's ability to grant or restrict a section 1782 request for discovery.

### E. Careaga's conduct is not sanctionable

Careaga, an unrepresented pro se defendant, has been responsive to the directives of this tribunal, and cooperated with Applicants to the extent necessary short of exposing himself to criminal prosecution in the country of Peru where, as mentioned, he now faces *formal* criminal charges.

Careaga's is rightfully invoking his American and Peruvian constitutional safeguards in the face of foreign criminal prosecution.   Applicants may want to minimize and undermine Careaga's attempts to preserve and secure his liberty and freedom.  This Court should prevent them from doing so.

### Additional Relief

Careaga will defer to this Court's ruling on whether a special magistrate should oversee Careaga's next deposition.

### Meet & Confer about production & his communications with Intervenors

Careaga has no problem discussing the search protocols he adopted in order to identify responsive documents in his possession and custody.  Intervenors may opine differently.

## CONCLUSION

**WHEREFORE,** Careaga would request the Court:

- Permit Careaga to invoke and assert any and all applicable constitutional rights and safeguards, be they from the U.S. Constitution or the Peruvian Constitiution and/or Peruvian Criminal Code *before* any testimony is given; once he has been notified

- Require that the Peruvian authorities provide him with notice of all formal accusations and charges leveled against him that emanate from the prosecutor's Formalization report issued on April 27, 2023;

- Deny Applicants' request for attorneys' fees and costs;

- Decide if a special master is appropriate;

- Give all the intervenors that are parties to this case notice of Applicants' request to meet and confer with Careaga regarding his production of documents to date, and to produce related communications with the Intervenors.

- Grant any other relief it deems just and equitable.

Dated: Miami, Florida
      September 11, 2023

Respectfully submitted,
VICTOR A. CAREAGA, Pro Se
Respondent
P.O. Box 226531
Miami, FL 33122
Email: victoracareaga23@gmail.com

### CERTIFICATE OF SERVICE

I certify that on September 11, 2023, this document is being served today on all counsel of record via email transmission, and it was filed with the Clerk of the Court for the Southern District of Florida.

Victor A. Careaga, Pro se