## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

A.O.A., *et al.*,                                    Case No. 4:11-cv-44-CDP
                                                     (CONSOLIDATED)


      Plaintiffs,

v.

DOE RUN RESOURCES
CORPORATION, *et al.*,

      Defendants.


      AND


J.Y.C.C., *et al.*,                                  Case No 15-cv-01704-RWS
                                                     (CONSOLIDATED)


      Plaintiffs,

v.

THE DOE RUN RESOURCES
CORPORATION, *et al.*,

      Defendants.

_____/


## <u>DEFENDANTS' MOTION FOR SANCTIONS AND REMEDIAL MEASURES</u>

Defendants The Doe Run Resources Corporation and The Renco Group Inc. respectfully

request sanctions against plaintiffs and remedial measures, pursuant to the Court's inherent

EXH. "A"

authority, for serious abuses of the judicial process. In support of this Motion, Doe Run and

Renco concurrently submit a Memorandum of Law.


Dated: July 31, 2023                              Respectfully submitted,

                                                 By: /s/ Robert J. Kuntz
                                                 ROBERT J. KUNTZ, JR.
                                                 Florida Bar No.: 94668
                                                 (Admitted pro hac vice)
                                                 ANDRES RIVERO
                                                 Florida Bar.: 613819
                                                 (Admitted pro hac vice)


                                                 **RIVERO MESTRE LLP**
                                                 2525 Ponce de Leon Blvd., Suite 1000
                                                 Coral Gables, Florida 33134
                                                 Telephone: (305) 445-2500
                                                 Facsimile: (305) 445-2505
                                                 E-mail: rkuntz@riveromestre.com
                                                 E-mail: receptionist@riveromestre.com

                                                 *Attorneys for Doe Run Resources Corp. and*
                                                 *The Renco Group, Inc.*


## CERTIFICATE OF SERVICE

I certify that on July 31, 2023, I electronically filed this document with the Clerk of the

Court using CM/ECF. I also certify that this document is being served today on all counsel of

record by transmission of Notices of Electronic Filing generated by CM/ECF and by email.


                                                 By: /s/ Robert J. Kuntz
                                                 Robert J. Kuntz

*[Translation of a document in Spanish]*

| | | |
|---|---|---|
| *[official seal]* | **PUBLIC MINISTRY** <br> NATIONAL PROSECUTOR'S OFFICE | "Year of unity, peace and development" <br><br> PROSECUTORIAL DISTRICT OF JUNIN <br> Office of the Collective Provincial Prosecutor <br> Specialized Against Organized Crime of Junín |

---

### FORMALIZATION AND CONTINUATION OF THE PREPARATORY INVESTIGATION

| | | |
|---|---|---|
| File: | : | 2206015600-2021-2-0. |
| Suspect: | : | José Luis Mesías Salazar et al. |
| Victim: | : | The Doe Run Ressources Corporation et al. |
| Crime: | : | Criminal organization, forgery of a public instrument, and others. |
| Case: | : | Criminal organization "the lead fixers" |
| | : | Juan Carlos Rodríguez Sosa. |
| Prosecutor in charge: | | |

**Resolution No. 07**
Huancayo, twenty-seventh of April,
two thousand twenty-three.

**I. IN VIEW OF.-** The proceedings against Miguel Angel Curi Osorio and others for the alleged commission of crimes against public peace in the forms of criminal organization and others to the detriment of the State and the legal persons The Renco Group and The Doe Run Resources Corporation.

**II. CONSIDERING.-**
2.1.     REGARDING THE FORMALIZATION OF THE PREPARATORY INVESTIGATION.-
Paragraph 1 of Article 336 of the New Code of Criminal Procedure states:

> *If from the complaint, from the Police Report or from the Preliminary Inquiries that were carried out, there are indications revealing the existence of a crime, [and] that the criminal complaint is not time-barred, that the defendant has been identified, and that, as the case may be, the procedural requirements have been met, the Formalization and Continuation of the Preparatory Investigation shall be ordered.*

This being the case, it has been established that the formalization of the preparatory investigation must integrate a series of prerequisites, both formal and substantive, in the sense that sufficient indicia of apparently criminal activity has been gathered corresponding to the possible commission of a criminal act, and that the alleged perpetrators of the punishable act have been identified; it is essential that a proper identification of the suspects be carried out, according to their degree of contribution to the crime, whether as perpetrators or participants.

Now then, in legal basis 24, Item B, of Plenary Repeal Judgment No. 01-2017-CIJ-433, the standard of proof necessary to formalize the preparatory investigation has been specified, as described below:

*[Ink stamp at the bottom left of every page]*
S/
*[Official logo]*
TERESITA MARAVI JERI
Provincial Prosecutor
Office of the Collective Provincial Prosecutor
Specialized Against Organized Crime of Junín
Public Ministry, Prosecutorial District of Junín

1.     B. *Revelatory suspicion* for the resolution to formalize the preparatory investigation – the intermediate degree of suspicion – as a formal charge of a provisional nature, consists of the

EXH. B

| [official seal] | **PUBLIC MINISTRY** NATIONAL PROSECUTOR'S OFFICE | PROSECUTORIAL DISTRICT OF JUNÍN Office of the Collective Provincial Prosecutor Specialized Against Organized Crime of Junín |

existence of facts or basic data that rationally serve as indications of a certain conduct (. . .), through the existence of persuasive evidence to a certain level, intermediate, of authority – the elements of proof, as is known, are those that are used for the construction of a judgment – to open a formal criminal procedure and, in due course, to serve as the necessary basis for the accusation and the opening of the trial – in such case the investigation sheds greater clarity on the facts under investigation. The facts necessary to explain the accusation, at the appropriate procedural moment, can only be determined fully and with the necessary explanation, at the end of the preliminary investigation.

## 2.2. BACKGROUND

2.2.1. On January 8, 2021, this prosecutor's office received the complaint filed by the attorney representing the companies The Renco Group Inc. and The Doe Run Resources Corporation. The complaint in question was directed against those who are found to be responsible for the alleged commission of the offenses of criminal organization, aggravated fraud, forgery of documents, forgery of official seals and stamps, and general misrepresentation, in addition to other crimes that can be included in the criminal report, all to the detriment of the companies: The Renco Group Inc. and The Doe Run Resources Corporation, and the State.

2.2.2. On January 21, 2021, Resolution No. 01 was issued, ordering the opening of preliminary proceedings against those who may be found responsible for the alleged commission of the crimes: against the public peace in the form of criminal organization defined and punished in Article 317 of the Penal Code, to the detriment of society (the State) represented by the Office of the Solicitor for Public Policy of the Ministry of the Interior; likewise, for the crime against property in the form of fraud is defined and punished in Article 296 of the Penal Code (basic type) and Article 196-A, paragraphs 2 and 3, of the same Code. Eighteen months was established as the term for the preliminary investigation.

2.2.3. After opening the preliminary investigation, various additional investigative acts have been carried out, which have made it possible to identify those possibly involved in the actions complained about, as well as to gather evidence meeting the revelatory suspicion standard, which is sufficient to make the issuance of this prosecutorial resolution feasible.

Certified Translation

"Year of unity, peace and development"

| [official seal] | PUBLIC MINISTRY<br>NATIONAL PROSECUTOR'S OFFICE |
|---|---|

PROSECUTORIAL DISTRICT OF JUNIN
Office of the Collective Provincial Prosecutor
Specialized Against Organized Crime of Junín

## 2.3. REGARDING THE REQUIREMENTS ESTABLISHED IN SECTION 2 OF ARTICLE 336 OF THE CODE OF CRIMINAL PROCEDURE.

### 2.3.1. INFORMATION ON TARGETS

a)

| Full name | Jose Luis Calmell del Solar Diaz |
|---|---|
| Nationality | Peruvian |
| Identification document | I.D. No. ███4720 |
| Domicile/address | ████████████████████████ Huancayo, department of Junín. |

b)

| Full name | Jorge Luis Mesias Salazar |
|---|---|
| Nationality | Peruvian |
| Identification document | I.D. No. ███4384 |
| Domicile/address | ████████████████████ Huancayo province, department of Junín |

c)

| Full name | Victor Armando Careaga |
|---|---|
| Nationality | United States |
| Identification document | PASSPORT ███9236 |
| Domicile/address | ████████ ██ ███████Medley, FL 33178, United States of America |

d)

| Full name | Eduardo Gianni Ayala-Maura |
|---|---|
| Nationality | United States |
| Identification document | PASSPORT ███0800 |
| Domicile/address | ██████ ███ ██ Miami, FL 33135, United States of America |

Certified Translatio

| [official seal] | **PUBLIC MINISTRY**<br>NATIONAL PROSECUTOR'S OFFICE | PROSECUTORIAL DISTRICT OF JUNÍN<br>Office of the Collective Provincial Prosecutor<br>Specialized Against Organized Crime of Junín |
|---|---|---|

e)

| **Full name** | Richard Lucio Romero Chavez |
|---|---|
| **Nationality** | Peruvian |
| **Identification document** | I.D. No.█████5512 |
| **Domicile/address** | ███████████████████ Yauli province, department of Junín. |

f)

| **Full name** | Miguel Angel Curi Osorio |
|---|---|
| **Nationality** | Peruvian |
| **Identification document** | I.D. No.█████9496 |
| **Domicile/address** | ██████████████████████████Tarma, department of Junín. |
| **Email address for notifications** | ████████@gmail.com Atty. Jose Luis Zevallos Sotomayor, mobile:█████8279 |

g)

| **Full name** | Gean Carlo Cartulin Landeo |
|---|---|
| **Nationality** | Peruvian |
| **Identification document** | I.D. No.████1035 |
| **Domicile/address** | ████████████████████████ Huancavelica |

h)

| **Full name** | Samantha Gabriela Roman Flores Varillas |
|---|---|
| **Nationality** | Peruvian |
| **Identification document** | ████9663 |

Certified Translatio

[official seal]

**PUBLIC MINISTRY**
NATIONAL PROSECUTOR'S OFFICE

"Year of unity, peace and development"

PROSECUTORIAL DISTRICT OF JUNÍN
Office of the Collective Provincial Prosecutor
Specialized Against Organized Crime of Junín

| Domicile/address | |
|---|---|
| | Huancayo, department of Junín. ████████ |

i)

| Full name | Angel Camarena Montes |
|---|---|
| Nationality | Peruvian |
| Identification document | I.D. No. ██ 7081 |
| Domicile/address | |
| | of Junín. ████████ Huancayo, department |

j)

| Full name | Gisela Berenis Paitan Lozano |
|---|---|
| Nationality | Peruvian |
| Identification document | I.D. No. ██ 6334 |
| Domicile/address | |
| | department of Junín. ████████ Huancayo, |

k)

| Full name | Rosario Renee Galarza Roque |
|---|---|
| Nationality | Peruvian |
| Identification document | I.D. No. ██ 0963 |
| Domicile/address | |
| | province, department of Junín. ████████ Yauli |

l)

| Full name | Arsenio Hugo Sanchez Baltazar |
|---|---|
| Nationality | Peruvian |
| Identification document | I.D. No. ██ 3959 |
| Domicile/address | |
| | ████████ Huancayo, department of Junín |

5

"Year of unity, peace and development"

| *[official seal]* | **PUBLIC MINISTRY**<br>NATIONAL PROSECUTOR'S OFFICE | | PROSECUTORIAL DISTRICT OF JUNIN<br>Office of the Collective Provincial Prosecutor<br>Specialized Against Organized Crime of Junín |

## 2.3.2. DESCRIPTION OF THE FACTS INVESTIGATED (INCRIMINATORY HYPOTHESIS).

### 2.3.2.1. Criminal Organization.

By way of background, in 2010, lawyers Víctor Armando Careaga and Eduardo Gianni Ayala-Maura, both belonging to the law firm Schlicther Bogard & Denton, which operates in the United States, would have conceived of a way to obtain sums of money from the collection of compensation from the legal entities The Renco Gropus *[sic]* Inc. and The Doe Run Resources Corporation, a compensation payment that would be ordered by the court of Missouri in the United States of America. For this purpose, the aforementioned lawyers sued The Renco Group Inc. and The Dore *[sic]* Run Resources Corporation in an attempt to make the Missouri court believe that the refinery operations carried out by the aforementioned companies in the province of Yauli in the department of Junín, in Peru, would have affected the health of numerous children in that province. The lawsuits being heard before the Missouri court would have been accumulated in two legal proceedings contained in case numbers: 4:11-CV-00044-CDP (Reid Case) and 4:15-CV-1704-RWS (Collins Case).

In order to ensure the success of the lawsuits filed before the Missouri court, and to present new cases of children supposedly affected by the aforementioned operations carried out by The Renco Gropus *[sic]* Inc. and The Doe Run Resources Corporation in the province of Yauli, around August 2014, the lawyers **Víctor Armando Careaga** and **Eduardo Gianni Ayala-Maura** created the criminal organization "the lead fixers," formally integrating the Peruvian lawyer **José Luis Calmell del Solar Díaz** into their organization.

In or around August 2014, the criminal organization "the lead fixers" would have created the so-called "Huancayo Group," thus consolidating the criminal organization, a group that was led by **Richard Lucio Romero Chávez**, who exercised the role of coordinator. The group in question was made up of the so-called "recruiters": **Miguel Ángel Curi Osorio, Gean Carlo Cartulín Landeo, Samantha Román Flores Varillas, Ángel Camarena Montes, Guisela Paitán Lozano** and **Rosario Renee Galarza Roque**. To support the work of the Huancayo Group, the already consolidated criminal organization had to assist in the work that the Huancayo Group would carry out, for which purpose lawyer **Jorge Luis Mesías Salazar** was incorporated into the criminal organization.

The Huancayo Group acted as the direct operator of the criminal organization "the lead fixers," and its functions were as follows:

*Certified Translation*

"Year of unity, peace and development"

| *[official seal]* | **PUBLIC MINISTRY**<br>NATIONAL PROSECUTOR'S OFFICE | PROSECUTORIAL DISTRICT OF JUNÍN<br>Office of the Collective Provincial Prosecutor<br>Specialized Against Organized Crime of Junín |
|---|---|---|

a)   To find potential plaintiffs (minors) and their parents, to later convince them to participate as such in the lawsuits filed in Missouri. After convincing the parents, the plaintiffs signed a letter of commitment; then they were assigned to one of the seven groups identified by the letters: A, B, C, D, E, F and G; each group was made up of around 200 plaintiffs. By way of example, the recruiter Miguel Ángel Curi Osorio was in charge of groups C, D and E, and his duties were: to hold meetings with the parents to convince them to sign the authorizations and/or powers of attorney in order to request or obtain the Plaintiffs' documentation in the Missouri lawsuit; to submit evidence; to coordinate trips with the plaintiffs and their families to different hotels in order to interview them and complete questionnaires; to collect records, academic and health certificates, medical certificates and other documents.

The recruiters provided or offered things of value to Peruvian officials to induce them to provide information to the recruiters; those of the Huancayo Group promoted the "*vaso de leche*" [glass of milk] public program to recruit more plaintiffs. Likewise, the recruiters of the Huancayo Group deceived numerous mothers and fathers of the plaintiffs into signing a commitment letter from Schlichter Bogard & Denton, who were told that they were signing up to receive a Christmas gift; however, many of these parents were surprised to learn that they had in fact signed a document to join the Missouri lawsuit, which they had no intention of joining.

b)   Faced with the difficulties in obtaining all of the documents required by the suing lawyers (Careaga and Gianni) from the educational and health institutions in Peru, the recruiters, such as Miguel Ángel Curi Osorio, were pressured by Jorge Mesías Salazar and other members of the alleged criminal organization for the Huancayo Group to manufacture and collect the documents that would be sent to the city of Lima and later to the lawyers in the United States, so that they could ultimately be filed in the judicial proceedings before the Missouri court.

The criminal organization "the lead fixers" also had ties to public notaries: **Augusto Juan Balbín Guadalupe** (deceased) and **Arsenio Hugo Sánchez Baltazar**. The alleged criminal organization paid the aforementioned notaries so that they would not review or compare documents that contained false information. In addition, signatures and fingerprints were forged. It is important to specify that the signature of **Augusto Juan Balbín Guadalupe** would have been forged on some documents in order to certify certain documents created by the criminal organization.

Miguel Ángel Curi Osorio worked with other individuals to create and

Certified Translatio

"Year of unity, peace and development"

| *[official seal]* | PUBLIC MINISTRY<br>NATIONAL PROSECUTOR'S OFFICE | PROSECUTORIAL DISTRICT OF JUNIN<br>Office of the Collective Provincial Prosecutor<br>Specialized Against Organized Crime of Junín |
|---|---|---|

alter the documents that they were responsible for collecting, along with the stamps and signatures of the authorities of the Ministry of Education and of Health. The Huancayo Group stamped government seals on the altered documents and forged the signatures of state officials to make them appear as if they were authentic documents. Among the documents and/or instruments that these individuals would have forged are certificates of education, health records, official letters from EsSalud, etc. The names on the signatures and false official seals include the following individuals: Christian Miguel Alfaro Sanabria (Ministry of Health), Celia Espinoza Canchaya (Ministry of Education), Alejandro López Ramos (Ministry of Health), Jenny Payano Rojas (Ministry of Health), David Oswaldo Orihuela Manrique (EsSalud), Cristina Torres U. (Ministry of Health), Elva Cancho Palomares (Ministry of Education), Luis Enrique Rodríguez Soriano (Ministry of Health), Jaime Alejandro Aquino Castro (Ministry of Education) and Institución Jorge Basadre G. (Ministry of Education).

Considering the number of documents that had to be processed and approved by the so-called Huancayo Group, and to assist in the oversight efforts of Jorge Mesías Salazar, the individual **Samantha Gabriela Román Flores Varillas**, who also served as secretary of Jorge Mesías Salazar, was incorporated into the criminal organization, and charged with reviewing the documents forwarded by the Huancayo Group and sending such documents to the United States so that they ultimately would be integrated into the legal proceedings being heard before the Missouri court.

According to information provided by the victim, in response to the trafficking of documents that were entered into the Missouri case, it is believed that the criminal organization "the lead fixers" would have operated as a criminal organization from August 2014 to 2021.

**2.3.2.2. Criminal ends**
**2.3.2.2.1. With regard to the crime of forgery of documents.**
After August 2014, the operational team of the criminal organization "the lead fixers," a team known as "Huancayo Group," in accordance with the criminal plan established by the leaders of the criminal organization in question, dedicated themselves to manufacturing false documents.

This being the case, Jorge Mesías Salazar would have ordered Miguel Ángel Curi Osorio, Gean Carlo Cartulín Landeo, Samantha Román Flores Varillas, Ángel Camarena Montes, Guisela Paitán Lozano and Rosario Renee Galarza Roque to obtain documents that help to support the lawsuits being heard before the Court of Missouri in the United States. The false documents are divided into two groups:

a) Documents that would be used to support the lawsuits before the Court

Certified Translation

*[official seal]*    **PUBLIC MINISTRY**
NATIONAL PROSECUTOR'S OFFICE

PROSECUTORIAL DISTRICT OF JUNIN
Office of the Collective Provincial Prosecutor
Specialized Against Organized Crime of Junín

of Missouri in the United States.

During the illegal operations carried out by the Huancayo Group, documents supposedly issued by institutions belonging to the Ministry of Education and the Ministry of Health would have been forged and/or created, as shown in the following outline:

| Ministry of Education | | |
|---|---|---|
| **Institution** | **Document** | **Official** |
| Educational Institution No. 418 "José Gálvez Barrenechea." | Proof of studies of Joseph Joel Diaz Tumialan – see folio 46 | Liz A. Cristina Torres U. in her role as director. |
| Educational Institution No. 418 "José Gálvez Barrenechea." | Proof of studies of Denisse Navarro Inga – see folio 48 | Liz A. Cristina Torres U. in her role as director. |
| Educational Institution No. 418 "José Gálvez Barrenechea." | Proof of studies of Rosario Lopez Rimari – see folio 50 | Liz A. Cristina Torres U. in her role as director. |
| Educational Institution No. 31146 "Jose Antonio Encinas" | Proof of studies of Steven Armando Peña Acero – see folio 98 | Javier Morayma Molina in his role as director. |
| Educational Institution No. 31148 "Manuel Scorza" | Proof of studies of Angie María del Carmen Toribio Palomino – see folio 100 | Paulina Rojas Llacua in her role as director. |
| Educational Institution No. 31148 "Manuel Scorza" | Proof of studies of Paola Rocio Guadalupe Huamán - see folio 105 | Paulina Rojas Llacua in her role as director. |
| Educational Institution No. 31148 "Manuel Scorza" | Proof of studies of Mayra Wendy Espinoza Miranda – see folio 111 | Paulina Rojas Llacua in her role as director. |
| Educational Institution No. 31148 "Manuel Scorza" | Proof of studies of Estrella Cajahuanca Córdova – see folio 113 | Paulina Rojas Llacua in her role as director. |
| Educational Institution No. | Proof of studies of | Paulina Rojas Llacua in her |

9

Certified Translation

"Year of unity, peace and development"

| [official seal] | **PUBLIC MINISTRY** **NATIONAL PROSECUTOR'S OFFICE** | PROSECUTORIAL DISTRICT OF JUNIN Office of the Collective Provincial Prosecutor Specialized Against Organized Crime of Junín |

| | | |
|---|---|---|
| 31148 "Manuel Scorza" | Adan Efrain Gónzales Yauri -- see folio 115 | role as director. |
| Educational Institution No. 31148 "Manuel Scorza" | Proof of studies of Daysi Estefani Gónzales Yauri - see folio 117 | Paulina Rojas Llacua in her role as director. |
| Educational Institution No. 31148 "Manuel Scorza" | Proof of studies of Andonl Nilsson Michue Cajahuaman - see folio 119 | Paulina Rojas Llacua in her role as director. |
| Educational Institution No. 31148 "Manuel Scorza" | Proof of studies of Jonathan Vega Mallqui - see folio 121 | Paulina Rojas Llacua in her role as director. |
| Educational Institution No. 31148 "Manuel Scorza" | Proof of studies of Juan Carlos Fuentes Lazo - see folio 123 | Paulina Rojas Llacua in her role as director. |
| Educational Institution No. 31520 "Jorge Basadre Grohmann" | Certificate of studies of Hugo Antony Onofre Figueroa - see folio 155 | - |
| Educational Institution No. 31520 "Jorge Basadre Grohmann" | Certificate of studies of Katiuska Rubi Atencio Romero - see folio 157 | - |
| Educational Institution No. 31520 "Jorge Basadre Grohmann" | Certificate of studies of Angelí Milagros Onofre Figueroa -see folio 159 | - |
| Educational Institution No. 31520 "Jorge Basadre Grohmann" | Certificate of studies of Cristhian Luis Onofre Figueroa - see folio 161 | - |
| Executive Body: Educación Yauli- La Oroya | Certificate of David Landa Figueroa - see folio 163 | Jaime Alejandro Aquino Castro |
| Executive Body: Educación Yauli- La Oroya | Certificate of Mishel Godiño Peña - see folio 165 | Jaime Alejandro Aquino Castro |
| Executive Body: Educación Yauli- La | Certificate of Jhunior Noe | Jaime Alejandro |

10

"Year of unity, peace and development"

[official seal]

**PUBLIC MINISTRY**
NATIONAL PROSECUTOR'S OFFICE

PROSECUTORIAL DISTRICT OF JUNIN
Office of the Collective Provincial Prosecutor
Specialized Against Organized Crime of Junín

| Oroya | Palacios Inga - see folio 169 | Aquino Castro |
|---|---|---|
| Executive Body: Educación Yauli- La Oroya | Certificate of Joshep Joel Diaz Tumialan - see folio 171 | Jaime Alejandro Aquino Castro |
| Executive Body: Educación Yauli- La Oroya | Certificate of Y▇▇ L▇ M▇▇ Q▇▇▇▇ - see folio 173 | Jaime Alejandro Aquino Castro |
| Executive Body: Educación Yauli- La Oroya | Certificate of José Gabriel Rosales Basteres - see folio 175 | Jaime Alejandro Aquino Castro |
| Executive Body: Educación Yauli- La Oroya | Certificate of Noelia Ivon Atencio Romero - see folio 177 | Jaime Alejandro Aquino Castro |
| Executive Body: Educación Yauli- La Oroya | Certificate of María Antonia Landa Cabanillas - see folio 179 | Jaime Alejandro Aquino Castro |
| Executive Body: Educación Yauli- La Oroya | Certificate of Nayely Zaira Atencio Romero - see folio 181- | Jaime Alejandro Aquino Castro |
| Executive Body: Educación Yauli- La Oroya | Certificate of Miguel Ángel Landa Cabanillas - see folio 183 | Jaime Alejandro Aquino Castro |

| Ministry of Health | | |
|---|---|---|
| **Institution** | **Document** | **Official** |
| Clas Huaynacancha | Medical History Report of Marvin Andrés Beraun Rojas | Edith Oscanoa Cóndor |
| Clas Huaynacancha | Clinical History Report of Cristhian José Ayala Villajuan | Edith Oscanoa Cóndor |
| "Felix Mayorca Soto" Hospital | Letter No. 0143-OEI-RED SALUD TARMA-2018. With regard to the medical history of Angie Juan de | Luis Rodríguez Soriano |

Certified Translatio

"Year of unity, peace and development"

| [official seal] | **PUBLIC MINISTRY**<br>NATIONAL PROSECUTOR'S OFFICE | | PROSECUTORIAL DISTRICT OF JUNÍN<br>Office of the Collective Provincial Prosecutor<br>Specialized Against Organized Crime of Junín |

| | Dios Palian. | |
|---|---|---|
| "Felix Mayorca Soto" Hospital | Letter No. 078-OEI-RED SALUD TARMA-2018, with regard to the clinical history of the son of Eduard Richard Rosales Terrel. | Luis Rodríguez Soriano |
| "Felix Mayorca Soto" Hospital | Letter No. 076-OEI-RED SALUD TARMA-2018, with regard to the clinical history of the son of Cristian Elio Vilchez Córdova. | Luis Rodríguez Soriano |
| "Felix Mayorca Soto" Hospital | Letter No. 0148-OEI-RED SALUD TARMA-2018, with regard to the clinical history of the son of Karla Patricia Soriano Villegas. | Luis Rodríguez Soriano |
| CLAS Santa Rosa de Sacco | Certificate of non-existence of clinical history of Daniel Ángel Ambrosio Cuba | Christhian Miguel Alfaro Sanabria |
| CLAS Santa Rosa de Sacco | Certificate of non-existence of clinical history of D▮ J▮ H▮ | Christhian Miguel Alfaro Sanabria |
| NATCLAR | Certificate of non-existence of clinical history of Juan Carlos Fuentes Lazo. | Carlos Alvarez |
| CLAS Santa Rosa de Sacco | Clinical history of Deisy Vicky Torres Laureano | |
| CLAS Santa Rosa de Sacco | Clinical History of Jair James Yali Inga | |

b) Letters of authority or authorizations from parents, representatives of the children who were allegedly wronged.

To carry out the corresponding procedures, i.e., to obtain documentation for its subsequent use in the legal proceedings in Missouri, as well as participating in those procedures, the Huancayo Group allegedly forged the signature of the parents of the plaintiff children – see folios 29 and 30. The following have been identified so far:

"Year of unity, peace and development"

| | |
|---|---|
| *[official seal]* | **PUBLIC MINISTRY**<br>NATIONAL PROSECUTOR'S OFFICE |

PROSECUTORIAL DISTRICT OF JUNÍN
Office of the Collective Provincial Prosecutor
Specialized Against Organized Crime of Junín

| Minor/plaintiff | Document |
|---|---|
| D████ J████ H████████ | Authorization to Participate in Missouri Trial |
| Y████ L████ M██████ C██████ | Authorization to Participate in Missouri Trial |
| B████ J████ C██████ M███████ | Authorization to Participate in Missouri Trial |
| J███ A████ C████ M███████ | Authorization to Participate in Missouri Trial |
| T████ A██████ C███ M█████ | Authorization to Participate in Missouri Trial |

To give greater credibility to the documents forged by the criminal organization, Jorge Mesías Salazar reached an agreement with the notaries Arsenio Hugo Sánchez Baltazar (notary from Tarma) and Augusto Juan Balbín Guadalupe (notary from La Oroya) to notarize signatures without verifying the identity of the owner.

Likewise, during the years 2014 to 2021, the so-called Huancayo Group manufactured stamps of authorities of the Ministry of Education and [Ministry of] Health. The Huancayo Group forged government seals for use in the altered documents and forged signatures of state officials to make them look like authentic documents issued by the corresponding institution or authority. The fraudulent official seals of health and educational institutions would correspond to: Christian Miguel Alfaro Sanabria (Ministry of Health), Celia Espinoza Canchaya (Ministry of Education), Alejandro López Ramos (Ministry of Health), Jenny Payano Rojas (Ministry of Health), David Oswaldo Orihuela Manrique (Essalud), Cristina Torres U. (Ministry of Health), Elva Cancho Palomares (Ministry of Education), Luis Enrique Rodríguez Soriano (Ministry of Health), Jaime Alejandro Aquino Castro (Ministry of Education) and Institución Jorge Basadre G. (Ministry of Education.

**2.3.2.2.2. With regard to the crime of forgery of public instruments**
In the context of drafting false documents by the operating team of the criminal organization "the lead fixers," the Huancayo Group would have acquired (original) certificate of studies forms from the Educational Institution No. 31148 "Manuel Scorza" in the province of La Oroya, in which false data would have been entered, certificates that would have been used in two judicial proceedings being heard before the Court of Missouri in the United States.

"Year of unity, peace and development"

| [official seal] | **PUBLIC MINISTRY**<br>NATIONAL PROSECUTOR'S OFFICE | | PROSECUTORIAL DISTRICT OF JUNÍN<br>Office of the Collective Provincial Prosecutor<br>Specialized Against Organized Crime of Junín |

### 2.3.3. LEGAL DEFINITION OF THE FACTS UNDER INVESTIGATION

The facts stated in Section 2.3.2. of this prosecutorial resolution are defined under the following criminal offenses:

**a) Criminal Organization**

With regard to the citizens José Luis Calmell del Solar Diaz, Jorge Luis Mesías Salazar, Víctor Armando Careaga, Eduardo Gianni Ayala-Maura, Richard Lucio Romero Chávez, Miguel Ángel Curi Osorio, Gean Carlo Cartulin Landeo, Samantha Gabriela Román Flores Varillas, Ángel Camarena Montes, Gisela Berenis Paitan Lozano, Rosario Renee Galarza Roque and Arsenio Hugo Sánchez Baltazar, for having allegedly committed the illegal offense of criminal organization, a criminal offense provided for in Article 317 of the Penal Code, the legal text of which is transcribed below:

> Article 317. Criminal organization.
>
> Whoever promotes, organizes, constitutes, or joins a criminal organization of three or more persons, with a regular, permanent, or indefinite term, which, in an organized, concerted, or coordinated manner distributes and assigns various tasks or functions leading to the commission of crimes, shall be punished with a prison sentence of no less than eight nor more than fifteen years and with one hundred eighty to three hundred sixty-five days' fine, and disqualification in accordance with Article 36, Subsections 1), 2), 4) and 8).
>
> The sentence shall be no less than fifteen or more than twenty years (...) in the following cases:
>
> When the agent had the position of leader, supervisor, sponsor, or director of the criminal organization; when, as a result of the criminal activities of the criminal organization, any of its members cause the death of a person or cause serious injuries to their physical or mental integrity.

It is important to specify that, regarding those under investigation: José Luis Calmell del Solar Díaz, Jorge Luis Mesías Salazar, Víctor Armando Careaga, Eduardo Gianni Ayala-Maura, Richard Lucio Romero Chávez, Miguel Ángel Curi Osorio, Gean Carlo Cartulin Landeo, Samantha Gabriela Román Flores Varillas, Ángel Camarena Montes, Gisela Berenis Paitan Lozano, and Rosario Renee Galarza Roque, they are provisionally charged with having committed the offense of criminal organization under the scope of Article 2 of Law 30077 (Law Against Organized Crime), considering that all of them would have been members of the criminal organization "the lead fixers."

Certified Translatio

"Year of unity, peace and development"

| [official seal] | PUBLIC MINISTRY NATIONAL PROSECUTOR'S OFFICE | | PROSECUTORIAL DISTRICT OF JUNIN Office of the Collective Provincial Prosecutor Specialized Against Organized Crime of Junín |

Moreover, as regards Arsenio Hugo Sánchez Baltazar, the provisions of Section 2 of Article 2 of Law 30077 (Law Against Organized Crime) are applicable to him, considering that as a result of his notarial duties, he would have had a link to the criminal organization "the lead fixers."

That said, this office finds that as of the present time, a criminal organization exists, at the **degree of revelatory suspicion**, in addition to the fact that the requirements established in Plenary Decision 1-2017 would be met, in which the National Criminal Chambers of the Judiciary have established a series of criteria, compatible with the provisions of Article 317 of the Penal Code and Article 2 of Law 30077, to objectively and reasonably determine whether (or not) we are dealing with a structure typical of a criminal organization. The analysis shall now be carried out:

| Criterion | Description of the criterion in the doctrine | | Analysis of the specific case Is the criterion met? |
|---|---|---|---|
| Personal element | To determine the existence of a criminal organization, it is required that it be made up of three or more individuals.<br><br>In relation to this requirement, Professor Prado (2021) points out that: "(...) the main advantage offered by the current legal text of Article 317 of the Penal Code, after being subjected to successive amendments that were applied by Law No. 30077 in 2013 and by Legislative Decrees Nos. 1181 of 2015 and 1244 of 2016, lies in the fact that its current regulatory structure has acquired an alternative definition of the criminal offense that allows for consideration of not only the creation of a criminal organization, but also its composition, organization and encouragement. However, as | Yes | **Justification**<br><br>Up to now, the alleged criminal organization "the lead fixers" would be or would have been made up of eleven members and two associates (both notaries, one of them deceased). |

15

"Year of unity, peace and development"

| [official seal] | **PUBLIC MINISTRY** NATIONAL PROSECUTOR'S OFFICE | | PROSECUTORIAL DISTRICT OF JUNIN Office of the Collective Provincial Prosecutor Specialized Against Organized Crime of Junín |

| | previously mentioned, it has also been useful to establish three individuals as the minimum number of members required for the existence of a criminal organization."[1] | | |
|---|---|---|---|
| Temporal element | Professor Peña Cabrera (2020) states: "The vocation of permanence constitutes an important ingredient in order to distinguish the criminal organization from criminal gangs or other similar groups. Those who only meet sporadically or occasionally to commit punishable acts cannot be seen as part of organized crime, since the stability that must be observed in a systematic and prolonged form of criminal perpetration defines the concept. This in turn implies pointing out that the criminal activity can be indefinite or transitory, but never occasional and/or sporadic."[2] | Yes | **Justification** The criminal organization, as such, would have been established approximately in August 2014, and would have carried out unlawful activities until at least the end of 2021. |
| Teleological element | This refers to the conception of a criminal plan that has been previously determined by the members of the criminal organization. Peña Cabrera (2020) indicates that one cannot talk about organized crime if it is observed that it acts in an improvised manner. On the other hand, the coordination and | Yes | **Justification** The criminal organization "the lead fixers" would have acted under a criminal plan set up by Víctor Armando Careaga, Eduardo Gianni Ayala-Maura and José Luis Calmell del Solar Díaz. These suspects developed a mechanism |

---

[1] Prado Saldarriaga, Victor. *Los delitos de crimen organizado*. Gaceta Júrídica. Lima – 2021.
[2] Peña Cabrera Freyre, Alonso. *Crimen Organizado – Aspectos generales – Tópicos de la parte general y especial*. Gaceta Jurídica, Lima, 2020

16

Certified Translatio

"Year of unity, peace and development"

| [official seal] | PUBLIC MINISTRY<br>NATIONAL PROSECUTOR'S OFFICE | | PROSECUTORIAL DISTRICT OF JUNIN<br>Office of the Collective Provincial Prosecutor<br>Specialized Against Organized Crime of Junín |

| | | | |
|---|---|---|---|
| | agreement is what allows for the success of the criminal plan, a plan that has previously been created by the leadership of the criminal organization. This not only has implications for the commission of the criminal ends, but also for the strategy of impunity.[3] | | to facilitate getting money in an unlawful manner, through various lawsuits in the United States against the victim corporations, for which purpose a specialized team was created, the so-called "Huancayo Group." |
| Functional element | For professor De la Cuesta (2001): "This factor is important in order to define the presence of a true criminal group, which by itself resembles the rules for conspiracy; however, it is important to specify that in these criminal associations, it is possible that the members at the top of the organization intervene at a preparatory level of the criminal plan, as happens in business crime; in other words, what needs to be examined here is the control and/or rule over the material acts undertaken by the lowest hands in the criminal structure, which would not have been committed if the members at the summit would not have provided the indispensable instruments and tools for it."[4] | Yes | **Justification**<br><br>As has been set forth in the description of the facts under investigation, each of the roles that the eleven members of the criminal organization "the lead fixers" played, as well as those linked to them (the notaries), has been specified. |
| Structural element | In this regard, Peña Cabrera (2017) states: "[i]t can | Yes | **Justification**<br><br>After analyzing the proceedings, this |

[3] *Ibid.*
[4] De la Cuesta Arzamendi, José. *El derecho penal ante la criminalidad organizada, nuevos retos y límites.* Zela, España, 2001

Certified Translation

"Year of unity, peace and development"

<table>
<tr><td>[official seal]</td><td><strong>PUBLIC MINISTRY</strong><br>NATIONAL PROSECUTOR'S OFFICE</td><td>PROSECUTORIAL DISTRICT OF JUNIN<br>Office of the Collective Provincial Prosecutor<br>Specialized Against Organized Crime of Junín</td></tr>
</table>

| | | |
|---|---|---|
| | be a matter of any (criminal) organizational structure, consisting or not of a pyramidal command entity, meaning that one could be facing a criminal organization with a complex mechanism, reaching the domain of transnationality, such as groups with a local, regional, or national operational and logistical reach. We can confirm this when the law itself indicates that its structure and scope of action can take any form, defining criminal associations of every kind."[5] | prosecutor's office has come to the conclusion that the criminal organization "the lead fixers" would have a pyramidal structure, according to the following description:<br><br>**First level**: Careaga, Eduardo Gianni Ayala-Maura and José Luis Calmell del Solar Díaz.<br><br>**Second level**: Jorge Luis Mesias Salazar.<br><br>**Third level**: Richard Lucio Romero Chávez.<br><br>**Fourth level**: Miguel Ángel Curi Osorio, Gean Carlo Cartulin Landeo, Samantha Gabriela Román Flores Varillas, Ángel Camarena Montes, Gisela Berenis Paitan Lozano and Rosario Renee Galarza Roque. |

**b) Forgery of documents**

With regard to the individuals under investigation, José Luis Calmell del Solar Diaz, Jorge Luis Mesías Salazar, Víctor Armando Careaga, Eduardo Gianni Ayala-Maura, Richard Lucio Romero Chávez, Miguel Ángel Curi Osorio, Gean Carlo Cartulin Landeo, Samantha Gabriela Román Flores Varillas, Ángel Camarena Montes, Gisela Berenis Paitan Lozano, Rosario Renee Galarza Roque and Arsenio Hugo Sánchez Baltazar, they are provisionally charged with the alleged commission of the crime against public faith in the form of forging of documents, pursuant to Article 427 of the Penal Code.

It is appropriate to specify that Article 3 of Law 30077 establishes a catalog of offenses compatible with organized crime. Within such list, specifically in section 20, the criminal offense of forgery of documents is found.

---

[5] Peña Cabrera Freyre, Alonso. *Derecho Penal. Parte General*. 6th Edition, Volume I, Idemsa, Lima, 2017

Certified Translatio

"Year of unity, peace and development"

| *[official seal]* | **PUBLIC MINISTRY**<br>NATIONAL PROSECUTOR'S OFFICE | PROSECUTORIAL DISTRICT OF JUNÍN<br>Office of the Collective Provincial Prosecutor<br>Specialized Against Organized Crime of Junín |
|---|---|---|

**c) Forgery of a public instrument**

With regard to the individuals under investigation, José Luis Calmell del Solar Diaz, Jorge Luis Mesías Salazar, Víctor Armando Careaga, Eduardo Gianni Ayala-Maura, Richard Lucio Romero Chávez, Miguel Ángel Curi Osorio, Gean Carlo Cartulin Landeo, Samantha Gabriela Román Flores Varillas, Ángel Camarena Montes, Gisela Berenis Paitan Lozano and Rosario Renee Galarza Roque, they are provisionally charged with the alleged commission of the crime against public faith in the form of forgery of a public instrument, pursuant to Article 428 of the Penal Code.

Considering the circumstances under which the alleged commission of the crime of forgery of a public instrument would have taken place, that is, within the execution of the criminal ends committed by the operational team of the criminal organization, we would be facing the existence of an actual concurrence of crimes, in accordance with the provisions of Article 50 of the Penal Code.

It is important to point out the existence of the concurrence of crimes, since this enables its investigation by this prosecutor's office, in accordance with the last paragraph of Article 3 of Law 30077.

**2.3.3. Alternative legal definition of the offense (forgery of official seals)**

Subparagraph b of Subsection 2 of [art.] 336 of the Code of Criminal Procedure grants the subject of a criminal action the possibility of applying to the act an alternative legal definition of the offense.

In the specific case, it has been found convenient to establish as alternative legal definition the alleged commission of the crime of forgery of official seals, provided for in Article 434 of the Penal Code, with respect to the facts set forth in Section 2.3.2.2.1. of this prosecutorial decision.

**2.3.4. DETERMINATION OF INJURED PARTIES:**

**2.3.4.1. With regard to the crime of criminal organization**

a)

| Legal entity | The State |
|---|---|
| Agent | Specialized Prosecutor for Crimes against Public Policy – Ministry of the Interior |
| E-mail for notification purposes | ███@mininter.gob.pe |

b)

| Legal entity | The Renco Group, Inc. |
|---|---|
| Legal representative | Juna Mario Peña Flores |
| E-mail for notification | ███@rpyabogados.com |

19

Certified Translatio

"Year of unity, peace and development"

| [official seal] | **PUBLIC MINISTRY**<br>NATIONAL PROSECUTOR'S OFFICE | PROSECUTORIAL DISTRICT OF JUNÍN<br>Office of the Collective Provincial Prosecutor<br>Specialized Against Organized Crime of Junín |

| **purposes** | | |

**c)**

| **Legal entity** | The Doe Run Resources *[Sic]* |
|---|---|
| **Legal representative** | Juan Mario Peña Flores |
| **E-mail for notification purposes** | ███████@rpyabogados.com |

## 2.3.4.2. With regard to the crime of forgery of documents
**a)**

| **Legal entity** | The State |
|---|---|
| **Representative** | Public Solicitor of the Ministry of Education |
| **Address** | ██████████████████████████ San Isidro, province and department of Lima. |

**b)**

| **Legal entity** | The State |
|---|---|
| **Representative** | Public Solicitor of the Ministry of Health |
| **Address** | ████████████████████ San Isidro, province and department of Lima. |

## 2.3.4.3. With regard to the crime of forgery of a public instrument
**a)**

| **Legal entity** | The State |
|---|---|
| **Representative** | Public Solicitor of the Ministry of Education |
| **Address** | ██████████████████████ San Isidro, province and department of Lima. |

## 2.6. WITH REGARD TO THE TERM FOR THE PRELIMINARY *[Sic]* INVESTIGATION.
Article 342 of the Code of Criminal Procedure establishes that: "In the case of investigation of crimes perpetrated by provisionally charged members of criminal organizations, individuals linked to them, or those acting on their behalf, the term for the preparatory investigation is thirty-six months.

Certified Translatio

"Year of unity, peace and development"

| *[official seal]* | **PUBLIC MINISTRY** <br> NATIONAL PROSECUTOR'S OFFICE | | PROSECUTORIAL DISTRICT OF JUNÍN <br> Office of the Collective Provincial Prosecutor <br> Specialized Against Organized Crime of Junín |

Our legislator has understood that the investigations for the alleged commission of the crime of organized crime involves carrying out complex and varied investigative acts, which justifies that the term for the preparatory investigation should be thirty-six months.

It is important to specify that in the present investigation it will be necessary to validate certain complementary information, as well as to lift the veil of bank secrecy to verify the existence of the alleged criminal plan, as well as to collect various statements; such investigative acts shall be expounded in the resolution section [hereof].

## 2.7. REGARDING CRIMES THAT SHALL NOT BE THE SUBJECT OF FORMALIZATION OF PREPARATORY INVESTIGATION

### 2.5.1. *[Sic]* With regard to the crime of fraud.

The crime of fraud is set forth in Article 196 of the Penal Code, which literally states:

> Article 196
>
> Whoever obtains an illicit advantage for themselves or another to the detriment of a third party, inducing or keeping the aggrieved party in error through deceit, cunning, ruse, or another fraudulent means shall be punished with a prison sentence of not less than one nor more than six years.

The defined offense is clear when pointing out that the typical conduct carried out by the active subject involves inducing or maintaining the aggrieved party, which in the specific case would be The Renco Group Inc. and The Doe Run Resources *[Sic]*, in error. However, in the facts that are under investigation, we note that the alleged criminal organization would have attempted to maintain the Missouri Court in error, and not The Renco Group Inc. and The Doe Run Resources *[Sic]*. This being the case, it is not possible to subsume the conduct carried out by the persons under investigation to the factual premise set forth in Article 196 of the Code of Criminal Procedure.

## III. DECISION

**IN LIGHT OF THE FOREGOING,** in accordance with the provisions of section 1 of Article 336 of the Code of Criminal Procedure, this Prosecutor's Office **RESOLVES:**

**FIRST: TO FORMALIZE THE PREPARATORY INVESTIGATION** for a term of **THIRTY-SIX MONTHS** against de José Luis Calmell del Solar Diaz, Jorge Luis Mesías Salazar, Víctor Armando Careaga, Eduardo Gianni Ayala-Maura, Richard Lucio Romero Chávez, Miguel Ángel Curi Osorio, Gean Carlo Cartulin Landeo, Samantha Gabriela Román Flores Varillas, Ángel Camarena

"Year of unity, peace and development"

*[official seal]*   PUBLIC MINISTRY
NATIONAL PROSECUTOR'S OFFICE

PROSECUTORIAL DISTRICT OF JUNÍN
Office of the Collective Provincial Prosecutor
Specialized Against Organized Crime of Junín

Montes, Gisela Berenis Paitan Lozano, Rosario Renee Galarza Roque and Arsenio Hugo Sánchez Baltazar for having allegedly committed the criminal offense of organized crime to the detriment of the State and the legal entities The Renco Group Inc and The Doe Run Resources *[Sic]*.

**SECOND: TO FORMALIZE THE PREPARATORY INVESTIGATION** for a term of **THIRTY-SIX MONTHS** against José Luis Calmell del Solar Diaz, Jorge Luis Mesías Salazar, Víctor Armando Careaga, Eduardo Gianni Ayala-Maura, Richard Lucio Romero Chávez, Miguel Ángel Curi Osorio, Gean Carlo Cartulin Landeo, Samantha Gabriela Román Flores Varillas, Ángel Camarena Montes, Gisela Berenis Paitan Lozano and Rosario Renee Galarza Roque for the alleged commission of the crime against public faith in the form of forgery of documents to the detriment of the State represented by the solicitors of the Ministries of Education and of Health.

**THIRD: TO FORMALIZE THE PREPARATORY INVESTIGATION** for a term of **THIRTY-SIX MONTHS** against José Luis Calmell del Solar Diaz, Jorge Luis Mesías Salazar, Víctor Armando Careaga, Eduardo Gianni Ayala-Maura, Richard Lucio Romero Chávez, Miguel Ángel Curi Osorio, Gean Carlo Cartulin Landeo, Samantha Gabriela Román Flores Varillas, Ángel Camarena Montes, Gisela Berenis Paitan Lozano and Rosario Renee Galarza Roque for the alleged commission of the crime against public faith in the form of forgery of public instruments to the detriment of the State represented by the solicitor of the Ministry of Education.

**FOURTH:** [To order] that the following investigative actions be taken:

**a)** Gather witness statements according to the following outline:

| No. | Full Names | Date (month/day/year) | Time |
|-----|-----------|-----------------------|------|
| 1 | Joseph Joel Diaz Tumialan | 05/15/23 | 11:30:00 |
| 2 | Denisse Navarro Inga | 05/15/23 | 15:00:00 |
| 3 | Rosario Lopez Rimari | 05/16/23 | 11:30:00 |
| 4 | Steven Armando Peña Acero | 05/16/23 | 15:00:00 |
| 5 | Angie María del Carmen Toribio Palomino | 05/17/23 | 11:30:00 |
| 6 | Paola Rocio Guadalupe Huamán | 05/17/23 | 15:30:00 |
| 7 | Mayra Wendy Espinoza Miranda | 05/18/23 | 11:30:00 |
| 8 | Estrella Cajahuanca Córdova | 05/18/23 | 15:00:00 |

Certified Translation

"Year of unity, peace and development"

| [official seal] | **PUBLIC MINISTRY**<br>NATIONAL PROSECUTOR'S OFFICE | PROSECUTORIAL DISTRICT OF JUNIN<br>Office of the Collective Provincial Prosecutor<br>Specialized Against Organized Crime of Junín |
|---|---|---|

| 9 | Adan Efrain Gónzales Yauri | 05/19/23 | 11:30:00 |
|---|---|---|---|
| 10 | Daysi Estefani Gónzales Yauri | 05/19/23 | 15:00:00 |
| 11 | Andonl Nilsson Michue Cajahuaman | 05/22/23 | 11:30:00 |
| 12 | Jonathan Vega Mallqui | 05/22/23 | 15:30:00 |
| 13 | Juan Carlos Fuentes Lazo | 05/23/23 | 11:30:00 |
| 14 | Hugo Antony Onofre Figueroa | 05/23/23 | 15:00:00 |
| 15 | Katiuska Rubi Atencio Romero | 05/24/23 | 11:30:00 |
| 16 | Angeli Milagros Onofre Figueroa | 05/24/23 | 15:00:00 |
| 17 | Cristhian Luis Onofre Figueroa | 05/25/23 | 11:30:00 |
| 18 | David Landa Cabanillas | 05/25/23 | 15:30:00 |
| 19 | Mishel Godiño Peña | 05/26/23 | 11:30:00 |
| 20 | Jhunior Noe Palacios Inga | 05/26/23 | 15:00:00 |
| 21 | Joshep Joel Diaz Tumialan | 05/29/23 | 11:30:00 |
| 22 | Y███ L██ M████ C█████████ | 05/29/23 | 15:00:00 |
| 23 | José Gabriel Rosales Basteres | 05/30/23 | 11:30:00 |
| 24 | Noelia Ivon Atencio Romero | 05/30/23 | 15:30:00 |
| 25 | María Antonia Landa Cabanillas | 05/31/23 | 11:30:00 |
| 26 | Nayely Zaira Atencio Romero | 05/31/23 | 15:00:00 |
| 27 | Miguel Ángel Landa Cabanillas | 06/01/23 | 11:30:00 |
| 28 | Marvin Andrés Beraun Rojas | 06/01/23 | 15:00:00 |
| 29 | Cristhian José Ayala Villajuan | 06/02/23 | 11:30:00 |
| 30 | Angie Juan de Dios Palian | 06/02/23 | 15:30:00 |
| 31 | Eduard Richard Rosales Terrel | 05/06/23 | 11:30:00 |

Certified Translation

"Year of unity, peace and development"

| [official seal] | PUBLIC MINISTRY<br>NATIONAL PROSECUTOR'S OFFICE | PROSECUTORIAL DISTRICT OF JUNÍN<br>Office of the Collective Provincial Prosecutor<br>Specialized Against Organized Crime of Junín |
|---|---|---|

| 32 | Cristian Elio Vilchez Córdova | 06/05/23 | 15:00:00 |
|---|---|---|---|
| 33 | Karla Patricia Soriano Villegas | 06/06/23 | 11:30:00 |
| 34 | Daniel Ángel Ambrosio Cuba | 06/06/23 | 15:00:00 |
| 35 | D███ J██████ H████ | 06/07/23 | 09:00:00 |
| 36 | Deisy Vicky Torres Laureano. | 06/07/23 | 11:00:00 |
| 37 | Jair James Yali Inga | 06/07/23 | 15:00:00 |

The thirty-seven procedures mentioned in the list shall be carried out in person at the Prosecutor's Office, located on the seventh floor of Pasaje Santa Teresa No. 247, San Carlos development, in the district and province of Huancayo, department of Junín.

**b)** Request the court of preparatory investigation to raise the veil of banking secrecy of José Luis Calmell del Solar Diaz, Jorge Luis Mesias Salazar, Víctor Armando Careaga, Eduardo Gianni Ayala-Maura, Richard Lucio Romero Chávez, Miguel Ángel Curi Osorio, Gean Carlo Cartulin Landeo, Samantha Gabriela Román Flores Varillas, Ángel Camarena Montes, Gisela Berenis Paitan Lozano and Rosario Renee Galarza Roque.

**c)** Once the financial information has been obtained, in order to guarantee the right of defense, gather the declarations of José Luis Calmell del Solar Diaz, Jorge Luis Mesias Salazar, Víctor Armando Careaga, Eduardo Gianni Ayala-Maura, Richard Lucio Romero Chávez, Miguel Ángel Curi Osorio, Gean Carlo Cartulin Landeo, Samantha Gabriela Román Flores Varillas, Ángel Camarena Montes, Gisela Berenis Paitan Lozano and Rosario Renee Galarza Roque.

**d)** Request the Regional Health Bureau to provide accurate information on the identity of Carlos Álvarez who works or worked at NATCLAR

**e)** Request the Regional Education Bureau to provide accurate information on the identity of Liz A. Cristina Torres U. who works or worked as director of the Educational Institution No. 418 "José Gálvez Barrenechea."

**f)** Carry out other investigative actions which may be useful, conducive, and pertinent.

**FIFTH: THERE ARE NO GROUNDS TO FORMALIZE THE PREPARATORY INVESTIGATION** against José Luis Calmell del Solar Diaz, Jorge Luis Mesias Salazar, Víctor Armando Careaga, Eduardo Gianni Ayala-Maura, Richard Lucio Romero Chávez, Miguel Ángel Curi Osorio, Gean Carlo Cartulin Landeo,

Certified Translatio

"Year of unity, peace and development"

| *[official seal]* | **PUBLIC MINISTRY**<br>NATIONAL PROSECUTOR'S OFFICE | PROSECUTORIAL DISTRICT OF JUNIN<br>Office of the Collective Provincial Prosecutor<br>Specialized Against Organized Crime of Junín |
|---|---|---|

Samantha Gabriela Román Flores Varillas, Ángel Camarena Montes, Gisela Berenis Paitan Lozano and Rosario Renee Galarza Roque for the alleged commission of a crime against property in the form of fraud, to the detriment of the legal entities The Renco Group, Inc. and The Doe Run Resources.

**BE IT FURTHER STATED.-** Pursuant to the provisions of section 3 of Article 336 of the Code of Criminal Procedure, [it is ordered that] this resolution be brought to the attention of the Preparatory Investigation Court of Huancayo, with the corresponding number of copies.

TMJ/jcrs

*[Signature]*
*[Official logo]*
**TERESITA MARAVI JERI**
Provincial Prosecutor
Office of the Specialized Provincial Plural Prosecutor
Against Organized Crime of Junín
Public Ministry, Prosecutorial District of Junín

*[--- End of document ---]*

Certified Translation

## CERTIFICATE OF ACCURACY

STATE OF FLORIDA                    )
                                    )
COUNTY OF MIAMI-DADE                )
_____   )

I, the undersigned, being duly sworn, hereby declare and state that I am fluent in the Spanish and English languages and have rendered a complete and accurate English translation of the attached Spanish language document titled "FORMALIZATION AND CONTINUATION OF THE PREPARATORY INVESTIGATION – File: 2206015600-2021-2-0."

Mario F. Pineda
July 17, 2023

Sworn and subscribed before me on this 17 day of July, 2023 by Mario F. Pineda, who produced identification No. P530-546-56-303-0.



YVETTE PUENTES
MY COMMISSION # HH 027546
EXPIRES: December 1, 2024
Bonded Thru Notary Public Underwriters

National Association of Judiciary Interpreters and Translators
M.f.pineda@hotmail.com
786-216-6169
451 Ives Dairy Rd. #302 – Miami, FL 33179

NAJIT

# Composite Exhibit 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

A.O.A., et al.,                    )
                                   )
         Plaintiffs,               )
                                   )
     v.                            )          Case No. 4:11 CV 44 CDP
                                   )
IRA L. RENNERT, et al.,            )
                                   )
         Defendants.               )

## ORDER

Defendants Doe Run Resources Corporation and The Renco Group ask that I impose sanctions against plaintiffs for alleged conduct giving rise to a criminal investigation that is in its preliminary/preparatory stage in Peru.  Addressing the motion would necessarily require me to assess the credibility of witness statements and the veracity of other evidence culled by Peru's prosecutors through the course of that ongoing investigation, which, under Peruvian law, must remain confidential.  It is not within the purview of this Court to make such premature judgments and findings, especially given their potential effect on a foreign criminal proceeding.  Because defendants' motion for sanctions asks me to do just that, I will deny the motion.  Accordingly,

**IT IS HEREBY ORDERED** that defendants Doe Run Resources Corporation and The Renco Group's Motion for Sanctions and Remedial Measures [1368] is **DENIED.**

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 29th day of August, 2023.

EXH. "C"

# PODER EJECUTIVO

## DECRETOS LEGISLATIVOS

### DECRETO LEGISLATIVO Nº 1244

### DECRETO LEGISLATIVO QUE FORTALECE LUCHA CONTRA EL CRIMEN ORGANIZADO Y LA TENENCIA ILEGAL DE ARMAS

EL PRESIDENTE DE LA REPÚBLICA

POR CUANTO:

Que, mediante Ley Nº 30506 el Congreso de la República ha delegado en el Poder Ejecutivo la facultad de legislar en materia de fortalecimiento de la seguridad ciudadana, reactivación económica y formalización, lucha contra la corrupción, agua y saneamiento, y reorganización de Petroperú, por un plazo de noventa (90) días calendario;

Que, las facultades otorgadas se encuentran enmarcadas en el literal a) del inciso 2) del artículo 2° de la citada Ley, por lo que el presente decreto legislativo, tiene por objeto modificar una serie de artículos del Código Penal a fin de implementar un marco regulatorio que dinamice y mejore los mecanismos de lucha contra la criminalidad organizada;

De conformidad con lo establecido en el artículo 104 de la Constitución Política del Perú;

Con el voto aprobatorio del Consejo de Ministros; y

Con cargo de dar cuenta al Congreso de la República;

Ha dado el Decreto Legislativo siguiente:

### DECRETO LEGISLATIVO QUE FORTALECE LUCHA CONTRA EL CRIMEN ORGANIZADO Y LA TENENCIA ILEGAL DE ARMAS

**Artículo 1.- Objeto**
El presente Decreto Legislativo tiene por objeto el fortalecimiento de la lucha contra el crimen organizado y la tenencia ilegal de armas.

**Artículo 2.- Modifican artículos del Código Penal**
Modifícanse los artículos 279, y 317 del Código Penal, aprobado por el Decreto Legislativo N° 635, los cuales quedan redactados de la siguiente manera:

"**Artículo 279.** Fabricación, suministro o tenencia de materiales peligrosos y residuos peligrosos

El que, sin estar debidamente autorizado, fabrica, ensambla, modifica, almacena, suministra, comercializa, ofrece o tiene en su poder bombas, **artefactos** o materiales explosivos, inflamables, asfixiantes o tóxicos o sustancias o materiales destinados para su preparación, será reprimido con pena privativa de libertad no menor de seis ni mayor de quince años, e inhabilitación conforme al inciso 6 del artículo 36 del Código Penal.

Será sancionado con la misma pena el que presta o alquila, **los bienes** a los que se hacen referencia en el primer párrafo.

El que trafica con bombas, **artefactos** o materiales explosivos, inflamables, asfixiantes o tóxicos o sustancias o materiales destinados para su preparación, será reprimido con pena privativa de libertad no menor de seis ni mayor de quince años, e inhabilitación conforme al inciso 6 del artículo 36 del Código Penal.

El que, sin estar debidamente autorizado, transforma o transporta materiales y residuos peligrosos sólidos, líquidos, gaseosos u otros, que ponga en peligro la vida, salud, patrimonio público o privado y el medio ambiente, será sancionado con la misma pena que el párrafo anterior.

**Artículo 317°.- Organización Criminal**
El que promueva, organice, constituya, o integre una organización criminal de tres o más personas con carácter estable, permanente o por tiempo indefinido, que de manera organizada, concertada o coordinada, se repartan diversas tareas o funciones, destinada a cometer delitos será reprimido con pena privativa de libertad no menor de ocho ni mayor de quince años y con ciento ochenta a trescientos sesenta y cinco días – multa, e inhabilitación conforme al artículo 36°, incisos 1), 2), 4) y 8).

La pena será no menor de quince ni mayor de veinte años y con ciento ochenta a trescientos sesenta y cinco días – multa, e inhabilitación conforme al artículo 36°, incisos 1), 2), 4) y 8) en los siguientes supuestos:

Cuando el agente tuviese la condición de líder, jefe, financista o dirigente de la organización criminal.

Cuando producto del accionar delictivo de la organización criminal, cualquiera de sus miembros causa la muerte de una persona o le causa lesiones graves a su integridad física o mental."

**Artículo 3.- Incorporación de artículos del Código Penal, aprobado por el Decreto Legislativo N° 635.**
Incorpórese los artículos del 279-G y 317 – B al Código Penal, los cuales quedan redactados de la siguiente manera:

"**Artículo 279-G.- Fabricación, comercialización, uso o porte de armas**
El que, sin estar debidamente autorizado, fabrica, ensambla, modifica, almacena, suministra, comercializa, trafica, usa, porta o tiene en su poder, armas de fuego de cualquier tipo, municiones, accesorios o materiales destinados para su fabricación o modificación, será reprimido con pena privativa de libertad no menor de seis ni mayor de diez años, e inhabilitación conforme al inciso 6 del artículo 36 del Código Penal.

Será sancionado con la misma pena el que presta, alquila o facilita, siempre que se evidencie la posibilidad de su uso para fines ilícitos, las armas o bienes a los que se hacen referencia en el primer párrafo. La pena privativa de libertad será no menor de ocho ni mayor de doce años cuando las armas o bienes, dados en préstamo o alquiler, sean de propiedad del Estado.

En cualquier supuesto, si el agente es miembro de las Fuerzas Armadas, Policía Nacional del Perú o Instituto Nacional Penitenciario la pena será no menor de diez ni mayor de quince años.

El que trafica armas de fuego artesanales o materiales destinados para su fabricación, será reprimido con pena privativa de libertad no menor de seis ni mayor de quince años.

Para todos los supuestos se impondrá la inhabilitación conforme a los incisos 1), 2) y 4) del artículo 36 del Código Penal, y adicionalmente el inciso 8) si es miembro de las Fuerzas Armadas o Policía Nacional del Perú y con ciento ochenta a trescientos sesenta y cinco días – multa.

**Artículo 317-B. Banda Criminal**
El que constituya o integre una unión de dos a más personas; que sin reunir alguna o algunas de las características de la organización criminal dispuestas en el artículo 317, tenga por finalidad o por objeto la comisión de delitos concertadamente; será reprimido con una pena privativa de libertad de no menor de cuatro ni mayor de ocho años y con ciento ochenta a trescientos sesenta y cinco días – multa"

**Artículo 4.- Modificación de artículos a la Ley Nº 30077, Ley contra el Crimen Organizado.**
Modifícase los artículos 3º y 24º de la Ley Nº 30077, Ley contra el Crimen Organizado, los cuales quedan redactados de la siguiente manera:


EXH. D

**602956**  **NORMAS LEGALES**  Sábado 29 de octubre de 2016 / El Peruano

"Artículo 3.- Delitos comprendidos
La presente Ley es aplicable a los siguientes delitos:

1. Homicidio calificado, *sicariato y la conspiración y el ofrecimiento para el delito de sicariato, de conformidad con los artículos 108, 108-C, 108-D del Código Penal.*
2. Secuestro, tipificado en el artículo 152 del Código Penal.
3. Trata de personas, tipificada en el artículo 153 del Código Penal.
4. Violación del secreto de las comunicaciones, en la modalidad delictiva tipificada en el artículo 162 del Código Penal.
5. Delitos contra el patrimonio, en las modalidades delictivas tipificadas en los artículos 186, 189, 195, 196-A y 197 del Código Penal.
6. Pornografía infantil, tipificado en el artículo 183-A del Código Penal.
7. Extorsión, tipificado en el artículo 200 del Código Penal.
8. Usurpación, en las modalidades delictivas tipificadas en los artículos 202 y 204 del Código Penal.
9. Delitos informáticos previstos en la ley penal.
10. Delitos monetarios, en las modalidades delictivas tipificadas en los artículos 252, 253 y 254 del Código Penal.
11. Tenencia, fabricación, tráfico ilícito de armas, municiones y explosivos y demás delitos tipificados en los artículos 279, 279-A, 279-B, 279-C y 279-D del Código Penal.
12. Delitos contra la salud pública, en las modalidades delictivas tipificadas en los artículos 294-A y 294-B del Código Penal.
13. Tráfico ilícito de drogas, en sus diversas modalidades previstas en la Sección II del Capítulo III del Título XII del Libro Segundo del Código Penal.
14. Delito de tráfico ilícito de migrantes, en las modalidades delictivas tipificadas en los artículos 303-A y 303-B del Código Penal.
15. Delitos ambientales, en las modalidades delictivas tipificadas en los artículos 307-A, 307-B, 307-C, 307-D y 307-E, 310-A, 310-B y 310-C del Código Penal.
16. Delito de marcaje o reglaje, previsto en el artículo 317-A del Código Penal.
17. Genocidio, desaparición forzada y tortura, tipificados en los artículos 319, 320 y 321 del Código Penal, respectivamente.
18. Delitos contra la administración pública, en las modalidades delictivas tipificadas en los artículos 382, 383, 384, 387, 393, 393-A, 394, 395, 396, 397, 397-A, 398, 399, 400 y 401 del Código Penal.
19. Delito de falsificación de documentos, tipificado en el primer párrafo del artículo 427 del Código Penal.
20. Lavado de activos, en las modalidades delictivas tipificadas en los artículos 1, 2, 3, 4, 5 y 6 del Decreto Legislativo 1106, Decreto Legislativo de lucha eficaz contra el lavado de activos.

Los alcances de la presente Ley son de aplicación a los delitos en los que se contemple como circunstancia agravante su comisión mediante una organización criminal a cualquier otro delito cometido en concurso con los previstos en el presente artículo.

*Artículo 24.- Prohibición de beneficios penitenciarios*
No pueden acceder a los beneficios penitenciarios la redención de la pena por el trabajo y la educación, semilibertad y liberación condicional:

1. Las personas a que hacen referencia los literales a), b) y e) del inciso 1 del artículo 22 de la presente ley.
2. Los demás integrantes de la organización criminal, siempre que el delito por el que fueron condenados sea cualquiera de los previstos en

los artículos 108, **108-C**, 152, 153, 153-A, 189, 200 del Código Penal."

POR TANTO:

Mando se publique y cumpla, dando cuenta al Congreso de la República.

Dado en la Casa de Gobierno, en Lima, a los veintisiete días del mes de octubre del año dos mil dieciséis.

PEDRO PABLO KUCZYNSKI GODARD
Presidente de la República

FERNANDO ZAVALA LOMBARDI
Presidente del Consejo de Ministros

MARÍA SOLEDAD PÉREZ TELLO
Ministra de Justicia y Derechos Humanos

CARLOS BASOMBRIO IGLESIAS
Ministro del Interior

**1447951-1**

## PRESIDENCIA DEL CONSEJO DE MINISTROS

**Declaran el Estado de Emergencia por derrame de petróleo en los distritos de Urarinas y Parinari de la provincia y departamento de Loreto**

DECRETO SUPREMO
N° 083-2016-PCM

EL PRESIDENTE DE LA REPÚBLICA

CONSIDERANDO:

Que, el día 19 de agosto de 2016 se produjo derrame de petróleo crudo, en aproximadamente 1,710 y 2,330 barriles, del Tramo I del Oleoducto Nor Peruano (ONP), en las progresivas Km 54+200 y Km 55+500, cercana a la Comunidad de Nuevo Alianza y en el perímetro de las aguas quebradas de Sabaloyacu (que desemboca en el río Marañón), originado en la primera progresiva, por corte circular pasante de 3.2 cm y de una longitud de 17 cm aproximadamente en la tubería que transporta el hidrocarburo, impactando un área de 3,473 m2 aproximadamente; y, en la segunda progresiva, por corte circular pasante de 6 cm cuya longitud es de 30 cm aproximadamente en la tubería que transporta el hidrocarburo impactando un área de 952 m2 aproximadamente; afectando localidades de los distritos de Urarinas y Parinari, en la provincia y departamento de Loreto;

Que, asimismo, el 22 de octubre de 2016, se registró otro derrame de crudo ocurrido en el canal de flotación, a la altura del Km 53+310 del Tramo I del Oleoducto Nor Peruano cerca a la Comunidad de Nueva Alianza, y se estima que las comunidades que van a ser afectadas son Santa Rosa, Santa Teresa, Unimaa, Cuninico, San Francisco, San Antonio, Maypuco, 6 de Mayo, Nueva Esperanza, Bello Horizonte y San Pedro, del distrito de Urarinas, provincia y departamento de Loreto;

Que, el numeral 68.5 del artículo 68 del Reglamento de la Ley N° 29664, Ley que crea el Sistema Nacional de Gestión del Riesgo de Desastres (SINAGERD), aprobado por el Decreto Supremo N° 048-2011-PCM, en concordancia con el numeral 9.2 del artículo 9 de la "Norma Complementaria sobre la Declaratoria de Estado de Emergencia por Desastre o Peligro Inminente, en el marco de la Ley N° 29664, del Sistema Nacional de Gestión de Riesgo de Desastres (SINAGERD)", aprobada por el Decreto Supremo N° 074-2014-PCM; establece que, excepcionalmente, la Presidencia del Consejo

# El Peruano

DIARIO OFICIAL

FUNDADO EN 1825 POR EL LIBERTADOR SIMÓN BOLÍVAR

Director (e): GERARDO BARRAZA SOTO

http://www.editoraperu.com.pe

"AÑO DEL ESTADO DE DERECHO Y DE LA GOBERNABILIDAD DEMOCRÁTICA"

# NORMAS LEGALES

*CRIMINAL CODE on PAGE 2*

Lima, jueves 29 de julio de 2004        AÑO XXI - N° 8804        Pág. 273515

## SUMARIO

### PODER LEGISLATIVO

#### CONGRESO DE LA REPÚBLICA

Ley N° 28305.- Ley de Control de Insumos Químicos y Productos Fiscalizados                273516

Ley N° 28306.- Ley que modifica artículos de la Ley N° 27693        273521

Ley N° 28307.- Ley que modifica y amplía los factores de reducción tarifaria de la Ley N° 27510, Fondo de Compensación Social Eléctrica (FOSE)        273528

Ley N° 28308.- Ley que regula el uso de descanso pre y postnatal del personal femenino de las Fuerzas Armadas y Policía Nacional del Perú        273528

Ley N° 28309.- Ley que modifica la Ley N° 28211        273529

### PODER EJECUTIVO

#### DECRETOS LEGISLATIVOS

D. Leg. N° 957.- Código Procesal Penal        273531

D. Leg. N° 958.- Decreto Legislativo que regula el Proceso de Implementación y Transitoriedad del Nuevo Código Procesal Penal        273609

#### PCM

D.S. N° 058-2004-PCM.- Aprueban el Reglamento de la Ley del Artista Intérprete y Ejecutante        273611

R.S. N° 249-2004-PCM.- Autorizan viaje de Ministro de Relaciones Exteriores a Bolivia en Visita Oficial        273616

R.S. N° 252-2004-PCM.- Encargan el Despacho de Relaciones Exteriores al Presidente del Consejo de Ministros        273616

#### DEFENSA

R.M. N° 832-2004-DE/MGP.- Autorizan contratar servicios personalísimos de profesional para efectuar propuesta de sistema previsional de las Fuerzas Armadas - Estudio Matemático Actuarial, mediante adjudicación de menor cuantía        273617

#### ECONOMÍA Y FINANZAS

R.D. N° 014-2004-EF/75.01.- Amplían plazo otorgado a DATATEC, CIMD Perú y BVL para que adecúen sus sistemas a lo dispuesto por el D.S. N° 179-2003-EF        273618

#### MIMDES

R.M. N° 450-2004-MIMDES.- Autorizan a procurador iniciar acciones por presuntas irregularidades en la Gerencia Local PRONAA Trujillo        273619

#### TRABAJO Y PROMOCIÓN DEL EMPLEO

R.M. N° 194-2004-TR.- Autorizan a procurador iniciar acciones legales para el cobro de suma de dinero otorgado a beneficiaria del Programa "A Trabajar Urbano"        273620

#### TRANSPORTES Y COMUNICACIONES

R.D. N° 0110-2004-MTC/12.- Otorgan renovación de permiso de operación a empresa Aeroturismo y Publicidad S.A.C. - MAGENTA AIR, para prestar servicio de transporte aéreo no regular nacional de pasajeros, carga y correo        273620

### ORGANISMOS AUTÓNOMOS

#### CONTRALORÍA GENERAL

Res. N° 310-2004-CG.- Autorizan publicar inscripción de sociedades de auditoría en el Registro de Sociedades calificadas para designación y contratación de servicios de auditorías que requieran entidades sujetas a control        273621

Res. N° 311-2004-CG.- Autorizan a procurador iniciar acciones a presuntos responsables de ocasionar perjuicio económico a la Municipalidad Distrital de Uticyacu        273622

Res. N° 312-2004-CG.- Autorizan a procurador iniciar acciones legales a presuntos responsables de delitos en el ex CTAR Cusco y Gobierno Regional del Cusco        273623

Res. N° 313-2004-CG.- Autorizan a procurador iniciar acciones legales por presunta comisión de delitos y perjuicio económico en agravio del ex CTAR Tumbes y Gobierno Regional Tumbes        273623

### ORGANISMOS DESCENTRALIZADOS

#### SUNARP

Res. N° 340-2004-SUNARP/SN.- Declaran en situación de urgencia la adquisición de diversos bienes para la Zona Registral N° IX - Sede Lima        273624

### GOBIERNOS LOCALES

#### MUNICIPALIDAD METROPOLITANA DE LIMA

Fe de Erratas Acuerdo N° 155        273625

#### MUNICIPALIDAD DE BREÑA

D.A. N° 09-2004-DA/MDB.- Prorrogan vigencia de la Ordenanza N° 121-MDB, que aprobó beneficio tributario en favor de contribuyentes del distrito        273626

#### MUNICIPALIDAD DE SANTA ANITA

D.A. N° 009-2004-ALC/MDSA.- Prorrogan beneficio tributario para pago de deudas acumuladas hasta el 2003 por concepto de arbitrios municipales        273626

#### PROVINCIAS

#### MUNICIPALIDAD DE LA PUNTA

Ordenanza N° 024-2004-MDLP/ALC.- Amplían plazo de vencimiento de pago de arbitrios correspondientes al mes de julio de 2004        273626

EXH. "E"

Lima, jueves 29 de julio de 2004    **NORMAS LEGALES**  El Peruano    Pág. 273531

## PODER EJECUTIVO

### DECRETOS LEGISLATIVOS

# CÓDIGO PROCESAL PENAL

**DECRETO LEGISLATIVO
Nº 957**

EL PRESIDENTE DE LA REPÚBLICA

POR CUANTO:

De conformidad con lo dispuesto en el artículo 104º de la Constitución Política del Perú, por Ley Nº 28269, publicada el 4 de julio de 2004, el Congreso de la República delega en el Poder Ejecutivo, la facultad de dictar mediante Decreto Legislativo, un nuevo Código Procesal Penal y sobre su implementación, así como cualquier otro asunto en materia procesal penal, dentro del término de treinta (30) días útiles;

Que, la Comisión Especial de Alto Nivel creada conforme a lo dispuesto en el artículo 1º del Decreto Supremo Nº 005-2003-JUS del 14 de marzo de 2003, ha cumplido con proponer las modificaciones y mecanismos legales de implementación del nuevo Código Procesal Penal;

Con el voto aprobatorio del Consejo de Ministros;

Con cargo a dar cuenta al Congreso de la República;

Ha dado el Decreto Legislativo siguiente:

### DECRETO LEGISLATIVO QUE PROMULGA CÓDIGO PROCESAL PENAL

**Artículo 1º.- OBJETO DE LA NORMA**
Promúlguese el Código Procesal Penal, aprobado por la Comisión Especial de Alto Nivel, constituida por Decreto Supremo Nº 005-2003-JUS, según el texto adjunto que consta de 566 artículos, distribuidos de modo y forma que a continuación se detalla:

| | | |
|---|---|---|
| Título Preliminar | : | Artículos I a X |
| LIBRO PRIMERO | : Disposiciones Generales | Artículos 1º a 113º |
| LIBRO SEGUNDO | : La Actividad Procesal | Artículos 114º a 320º |
| LIBRO TERCERO | : El Proceso Común | Artículos 321º a 403º |
| LIBRO CUARTO | : La Impugnación | Artículos 404º a 445º |
| LIBRO QUINTO | : Los Procesos Especiales | Artículos 446º a 487º |
| LIBRO SEXTO | : La Ejecución y las Costas | Artículos 488º a 507º |
| LIBRO SÉPTIMO | : La Cooperación Judicial Internacional | Artículos 508º a 566º |

DISPOSICIONES COMPLEMENTARIAS

POR TANTO:

Mando se publique y cumpla, dando cuenta al Congreso de la República.

Dado en la Casa de Gobierno, en Lima, a los veintidós días del mes de julio del año dos mil cuatro.

ALEJANDRO TOLEDO
Presidente Constitucional de la República

CARLOS FERRERO
Presidente del Consejo de Ministros

BALDO KRESALJA ROSSELLÓ
Ministro de Justicia

### ÍNDICE GENERAL

**TÍTULO PRELIMINAR**

**LIBRO PRIMERO
DISPOSICIONES GENERALES**

SECCIÓN I
LA ACCIÓN PENAL

SECCIÓN II
LA ACCIÓN CIVIL

SECCIÓN III
LA JURISDICCIÓN Y COMPETENCIA

  TÍTULO I
  LA JURISDICCIÓN

  TÍTULO II
  LA COMPETENCIA

    CAPÍTULO I
    LA COMPETENCIA POR EL TERRITORIO

    CAPÍTULO II
    LA COMPETENCIA OBJETIVA Y FUNCIONAL

    CAPÍTULO III
    LA COMPETENCIA POR CONEXIÓN

  TÍTULO III
  CONCURSO PROCESAL DE DELITOS

  TÍTULO IV
  CUESTIONES DE COMPETENCIA

    CAPÍTULO I
    LA DECLINATORIA DE COMPETENCIA

    CAPÍTULO II
    LA TRANSFERENCIA DE COMPETENCIA

    CAPÍTULO III
    LA CONTIENDA DE COMPETENCIA

    CAPÍTULO IV
    LA ACUMULACIÓN

    CAPÍTULO V
    LA INHIBICIÓN Y RECUSACIÓN

SECCIÓN IV
EL MINISTERIO PÚBLICO Y LOS DEMÁS SUJETOS PROCESALES

  TÍTULO I
  EL MINISTERIO PÚBLICO Y LA POLICÍA NACIONAL

    CAPÍTULO I
    EL MINISTERIO PÚBLICO

    CAPÍTULO II
    LA POLICÍA

  TÍTULO II
  EL IMPUTADO Y EL ABOGADO DEFENSOR

    CAPÍTULO I
    EL IMPUTADO

Pág. 273532   El Peruano   NORMAS LEGALES   Lima, jueves 29 de julio de 2004

**CAPÍTULO II**
EL ABOGADO DEFENSOR

**CAPÍTULO III**
LA DECLARACIÓN DEL IMPUTADO

**TÍTULO III**
LAS PERSONAS JURÍDICAS

**TÍTULO IV**
LA VÍCTIMA

**CAPÍTULO I**
EL AGRAVIADO

**CAPÍTULO II**
EL ACTOR CIVIL

**CAPÍTULO III**
EL QUERELLANTE PARTICULAR

**TÍTULO V**
EL TERCERO CIVIL

**LIBRO SEGUNDO**
**LA ACTIVIDAD PROCESAL**

**SECCIÓN I**
PRECEPTOS GENERALES

**TÍTULO I**
LAS ACTUACIONES PROCESALES

**CAPÍTULO I**
LAS FORMALIDADES

**CAPÍTULO II**
LAS ACTAS

**CAPÍTULO III**
LAS DISPOSICIONES Y LAS RESOLUCIONES

**CAPÍTULO IV**
LAS NOTIFICACIONES Y CITACIONES

**CAPÍTULO V**
COMUNICACIÓN ENTRE AUTORIDADES

**CAPÍTULO VI**
LA FORMACIÓN DEL EXPEDIENTE FISCAL Y JUDICIAL

**TÍTULO II**
LOS PLAZOS

**TÍTULO III**
LA NULIDAD

**SECCIÓN II**
LA PRUEBA

**TÍTULO I**
PRECEPTOS GENERALES

**TÍTULO II**
LOS MEDIOS DE PRUEBA

**CAPÍTULO I**
LA CONFESIÓN

**CAPÍTULO II**
EL TESTIMONIO

**CAPÍTULO III**
LA PERICIA

**CAPÍTULO IV**
EL CAREO

**CAPÍTULO V**
LA PRUEBA DOCUMENTAL

**CAPÍTULO VI**
LOS OTROS MEDIOS DE PRUEBA

**SUBCAPÍTULO I**
EL RECONOCIMIENTO

**SUBCAPÍTULO II**
LA INSPECCIÓN JUDICIAL Y LA RECONSTRUCCIÓN

**SUBCAPÍTULO III**
LAS PRUEBAS ESPECIALES

**TÍTULO III**
LA BÚSQUEDA DE PRUEBAS Y RESTRICCIÓN DE DERECHOS

**CAPÍTULO I**
PRECEPTOS GENERALES

**CAPÍTULO II**
EL CONTROL DE IDENTIDAD Y LA VIDEOVIGILANCIA

**SUBCAPÍTULO I**
EL CONTROL DE IDENTIDAD POLICIAL

**SUBCAPÍTULO II**
LA VIDEOVIGILANCIA

**CAPÍTULO III**
LAS PESQUISAS

**CAPÍTULO IV**
LA INTERVENCIÓN CORPORAL

**CAPÍTULO V**
EL ALLANAMIENTO

**CAPÍTULO VI**
LA EXHIBICIÓN FORZOZA Y LA INCAUTACIÓN

**SUBCAPÍTULO I**
LA EXHIBICIÓN E INCAUTACIÓN DE BIENES

**SUBCAPÍTULO II**
LA EXHIBICIÓN E INCAUTACIÓN DE ACTUACIONES Y DOCUMENTOS NO PRIVADOS

**CAPÍTULO VII**
EL CONTROL DE COMUNICACIONES Y DOCUMENTOS PRIVADOS

**SUBCAPÍTULO I**
LA INTERCEPTACIÓN E INCAUTACIÓN POSTAL

**SUBCAPÍTULO II**
LA INTERVENCIÓN DE COMUNICACIONES Y TELECOMUNICACIONES

**SUBCAPÍTULO III**
EL ASEGURAMIENTO E INCAUTACIÓN DE DOCUMENTOS PRIVADOS

**CAPÍTULO VIII**
EL LEVANTAMIENTO DEL SECRETO BANCARIO Y DE LA RESERVA TRIBUTARIA

**CAPÍTULO IX**
LA CLAUSURA O VIGILANCIA DE LOCALES E INMOVILIZACIÓN

**TÍTULO IV**
LA PRUEBA ANTICIPADA

**TÍTULO V**
LAS MEDIDAS DE PROTECCIÓN

**SECCIÓN III**
LAS MEDIDAS DE COERCIÓN PROCESAL

Lima, jueves 29 de julio de 2004 　**NORMAS LEGALES** **El Peruano** 　Pág. 273533

TÍTULO I
PRECEPTOS GENERALES

TÍTULO II
LA DETENCIÓN

TÍTULO III
LA PRISIÓN PREVENTIVA

    CAPÍTULO I
    LOS PRESUPUESTOS DE LA PRISIÓN PREVEN-
    TIVA

    CAPÍTULO II
    LA DURACIÓN DE LA PRISIÓN PREVENTIVA

    CAPÍTULO III
    LA IMPUGNACIÓN DE LA PRISIÓN PREVENTIVA

    CAPÍTULO IV
    LA REVOCATORIA DE LA COMPARECENCIA POR
    PRISIÓN PREVENTIVA

    CAPÍTULO V
    LA INCOMUNICACIÓN

    CAPÍTULO VI
    LA CESACIÓN DE LA PRISIÓN PREVENTIVA

TÍTULO IV
LA COMPARECENCIA

TÍTULO V
LA INTERNACION PREVENTIVA

TÍTULO VI
EL IMPEDIMENTO DE SALIDA

TÍTULO VII
DE LA SUSPENSIÓN PREVENTIVA DE DERECHOS

TÍTULO VIII
EL EMBARGO

TÍTULO IX
OTRAS MEDIDAS REALES

TÍTULO X
LA INCAUTACIÓN

        LIBRO TERCERO
        EL PROCESO COMÚN

SECCIÓN I
LA INVESTIGACIÓN PREPARATORIA

    TÍTULO I
    NORMAS GENERALES

    TÍTULO II
    LA DENUNCIA Y LOS ACTOS INICIALES DE LA IN-
    VESTIGACIÓN

        CAPÍTULO I
        LA DENUNCIA

        CAPÍTULO II
        ACTOS INICIALES DE LA INVESTIGACIÓN

    TÍTULO III
    LA INVESTIGACIÓN PREPARATORIA

    TÍTULO IV
    LOS ACTOS ESPECIALES DE INVESTIGACIÓN

    TÍTULO V
    CONCLUSIÓN DE LA INVESTIGACIÓN PREPARATO-
    RIA

SECCIÓN II
LA ETAPA INTERMEDIA

TÍTULO I
EL SOBRESEIMIENTO

TÍTULO II
LA ACUSACIÓN

TÍTULO III
EL AUTO DE ENJUICIAMIENTO

TÍTULO IV
EL AUTO DE CITACIÓN A JUICIO

SECCIÓN III
EL JUZGAMIENTO

    TÍTULO I
    PRECEPTOS GENERALES

    TÍTULO II
    LA PREPARACIÓN DEL DEBATE

    TÍTULO III
    EL DESARROLLO DEL JUICIO

    TÍTULO IV
    LA ACTUACIÓN PROBATORIA

    TÍTULO V
    LOS ALEGATOS FINALES

    TÍTULO VI
    LA DELIBERACIÓN Y LA SENTENCIA

        LIBRO CUARTO
        LA IMPUGNACIÓN

SECCIÓN I
PRECEPTOS GENERALES

SECCIÓN II
LOS RECURSOS

SECCIÓN III
EL RECURSO DE REPOSICIÓN

SECCIÓN IV
EL RECURSO DE APELACIÓN

    TÍTULO I
    PRECEPTOS GENERALES

    TÍTULO II
    LA APELACIÓN DE AUTOS

    TÍTULO III
    LA APELACIÓN DE SENTENCIAS

SECCIÓN V
EL RECURSO DE CASACIÓN

SECCIÓN VI
EL RECURSO DE QUEJA

SECCIÓN VII
LA ACCIÓN DE REVISIÓN

        LIBRO QUINTO
        LOS PROCESOS ESPECIALES

SECCIÓN I
EL PROCESO INMEDIATO

SECCIÓN II
EL PROCESO POR RAZÓN DE LA FUNCIÓN PÚBLICA

    TÍTULO I
    EL PROCESO POR DELITOS DE FUNCIÓN ATRIBUI-
    DOS A ALTOS FUNCIONARIOS PÚBLICOS

    TÍTULO II
    EL PROCESO POR DELITOS COMUNES ATRIBUI-
    DOS A CONGRESISTAS Y OTROS ALTOS FUNCIO-
    NARIOS

**Pág. 273534   El Peruano   NORMAS LEGALES**

Lima, jueves 29 de julio de 2004

**TÍTULO III**
EL PROCESO POR DELITOS DE FUNCIÓN ATRIBUI-
DOS A OTROS FUNCIONARIOS PÚBLICOS

**SECCIÓN III**
EL PROCESO DE SEGURIDAD

**SECCIÓN IV**
PROCESO POR DELITO DE EJERCICIO PRIVADO DE
LA ACCIÓN PENAL

**SECCIÓN V**
EL PROCESO DETERMINACIÓN ANTICIPADA

**SECCIÓN VI**
PROCESO POR COLABORACIÓN EFICAZ

**SECCIÓN VII**
EL PROCESO POR FALTAS

**LIBRO SEXTO**
LA EJECUCIÓN Y LAS COSTAS

**SECCIÓN I**
LA EJECUCIÓN DE LA SENTENCIA

**SECCIÓN II**
LAS COSTAS

**LIBRO SÉPTIMO**
LA COOPERACIÓN JUDICIAL INTERNACIONAL

**SECCIÓN I**
PRECEPTOS GENERALES

**SECCIÓN II**
LA EXTRADICIÓN

    **TÍTULO I**
    CONDICIONES GENERALES

    **TÍTULO II**
    LA EXTRADICIÓN PASIVA

    **TÍTULO III**
    LA EXTRADICIÓN ACTIVA

**SECCIÓN III**
LA ASISTENCIA JUDICIAL INTERNACIONAL

**SECCIÓN IV**
LAS DILIGENCIAS EN EL EXTERIOR

**SECCIÓN V**
EL CUMPLIMIENTO DE CONDENAS

    **TÍTULO I**
    LAS PENAS Y LAS MEDIDAS PRIVATIVAS DE LIBER-
    TAD EFECTIVAS

    **TÍTULO II**
    LAS OTRAS PENAS Y MEDIDAS DE SEGURIDAD

**SECCIÓN VI**
LA ENTREGA VIGILADA

**SECCIÓN VII**
COOPERACIÓN CON LA CORTE PENAL INTERNACIO-
NAL

    **TÍTULO I**
    ASPECTOS GENERALES

    **TÍTULO II**
    LA DETENCIÓN Y ENTREGA DE PERSONAS Y LA
    DETENCIÓN PROVISIONAL

    **TÍTULO III**
    LOS DEMÁS ACTOS DE COOPERACIÓN

    **TÍTULO IV**
    LA EJECUCIÓN DE LA PENA

**DISPOSICIONES COMPLEMENTARIAS**

**DISPOSICIONES FINALES**

**DISPOSICIONES TRANSITORIAS**

**DISPOSICIONES MODIFICATORIAS Y DEROGATORIAS**

## CÓDIGO PROCESAL PENAL

### TÍTULO PRELIMINAR

**Artículo I°. Justicia Penal.-**

1. La justicia penal es gratuita, salvo el pago de las cos-
tas procesales establecidas conforme a este Código. Se
imparte con imparcialidad por los órganos jurisdiccionales
competentes y en un plazo razonable.
2. Toda persona tiene derecho a un juicio previo, oral,
público y contradictorio, desarrollado conforme a las nor-
mas de este Código.
3. Las partes intervendrán en el proceso con iguales
posibilidades de ejercer las facultades y derechos previs-
tos en la Constitución y en este Código. Los jueces preser-
varán el principio de igualdad procesal, debiendo allanar
todos los obstáculos que impidan o dificulten su vigencia.
4. Las resoluciones son recurribles, en los casos y en
el modo previsto por la Ley. Las sentencias o autos que
ponen fin a la instancia son susceptibles de recurso de ape-
lación.
5. El Estado garantiza la indemnización por los errores
judiciales.

**Artículo II°. Presunción de Inocencia.-**

1. Toda persona imputada de la comisión de un hecho
punible es considerada inocente, y debe ser tratada como
tal, mientras no se demuestre lo contrario y se haya decla-
rado su responsabilidad mediante sentencia firme debida-
mente motivada. Para estos efectos, se requiere de una
suficiente actividad probatoria de cargo, obtenida y actua-
da con las debidas garantías procesales.
En caso de duda sobre la responsabilidad penal debe
resolverse a favor del imputado.
2. Hasta antes de la sentencia firme, ningún funciona-
rio o autoridad pública puede presentar a una persona como
culpable o brindar información en tal sentido.

**Artículo III°. Interdicción de la persecución penal
múltiple.-** Nadie podrá ser procesado, ni sancionado mas
de una vez por un mismo hecho, siempre que se trate del
mismo sujeto y fundamento. Este principio rige para las
sanciones penales y administrativas. El derecho penal tie-
ne preeminencia sobre el derecho administrativo.
La excepción a esta norma es la revisión por la Corte
Suprema de la sentencia condenatoria expedida en alguno
de los casos en que la acción está indicada taxativamente
como procedente en este Código.

**Artículo IV°. Titular de la acción penal.-**

1. El Ministerio Público es titular del ejercicio público de
la acción penal en los delitos y tiene el deber de la carga
de la prueba. Asume la conducción de la investigación des-
de su inicio.
2. El Ministerio Público está obligado a actuar con obje-
tividad, indagando los hechos constitutivos de delito, los
que determinen y acrediten la responsabilidad o inocencia
del imputado. Con esta finalidad conduce y controla jurídi-
camente los actos de investigación que realiza la Policía
Nacional.
3. Los actos de investigación que practica el Ministerio
Público o la Policía Nacional no tienen carácter jurisdiccio-
nal. Cuando fuera indispensable una decisión de esta na-
turaleza la requerirá del órgano jurisdiccional, motivando
debidamente su petición.

**Artículo V°. Competencia judicial.-**

1. Corresponde al órgano jurisdiccional la dirección de
la etapa intermedia y, especialmente, del juzgamiento; así

como expedir las sentencias y demás resoluciones previstas en la Ley.

2. Nadie puede ser sometido a pena o medida de seguridad sino por resolución del órgano jurisdiccional determinado por la Ley.

**Artículo VIº. Legalidad de las medidas limitativas de derechos.-** Las medidas que limitan derechos fundamentales, salvo las excepciones previstas en la Constitución, sólo podrán dictarse por la autoridad judicial, en el modo, forma y con las garantías previstas por la Ley. Se impondrán mediante resolución motivada, a instancia de la parte procesal legitimada. La orden judicial debe sustentarse en suficientes elementos de convicción, en atención a la naturaleza y finalidad de la medida y al derecho fundamental objeto de limitación, así como respetar el principio de proporcionalidad.

**Artículo VIIº. Vigencia e interpretación de la Ley procesal penal.-**

1. La Ley procesal penal es de aplicación inmediata, incluso al proceso en trámite, y es la que rige al tiempo de la actuación procesal. Sin embargo, continuarán rigiéndose por la Ley anterior, los medios impugnatorios ya interpuestos, los actos procesales con principio de ejecución y los plazos que hubieran empezado.

2. La Ley procesal referida a derechos individuales que sea más favorable al imputado, expedida con posterioridad a la actuación procesal, se aplicará retroactivamente, incluso para los actos ya concluidos, si fuera posible.

3. La Ley que coacte la libertad o el ejercicio de los derechos procesales de las personas, así como la que limite un poder conferido a las partes o establezca sanciones procesales, será interpretada restrictivamente. La interpretación extensiva y la analogía quedan prohibidas mientras no favorezcan la libertad del imputado o el ejercicio de sus derechos.

4. En caso de duda insalvable sobre la Ley aplicable debe estarse a lo más favorable al reo.

**Artículo VIIIº. Legitimidad de la prueba.-**

1. Todo medio de prueba será valorado sólo si ha sido obtenido e incorporado al proceso por un procedimiento constitucionalmente legítimo.

2. Carecen de efecto legal las pruebas obtenidas, directa o indirectamente, con violación del contenido esencial de los derechos fundamentales de la persona.

3. La inobservancia de cualquier regla de garantía constitucional establecida a favor del procesado no podrá hacerse valer en su perjuicio.

**Artículo IXº. Derecho de Defensa.-**

1. Toda persona tiene derecho inviolable e irrestricto a que se le informe de sus derechos, a que se le comunique de inmediato y detalladamente la imputación formulada en su contra, y a ser asistida por un Abogado Defensor de su elección o, en su caso, por un abogado de oficio, desde que es citada o detenida por la autoridad. También tiene derecho a que se le conceda un tiempo razonable para que prepare su defensa; a ejercer su autodefensa material; a intervenir, en plena igualdad, en la actividad probatoria; y, a utilizar los medios de prueba pertinentes. El ejercicio del derecho de defensa se extiende a todo estado y grado del procedimiento, en la forma y oportunidad que la ley señala.

2. Nadie puede ser obligado o inducido a declarar o a reconocer culpabilidad contra sí mismo, contra su cónyuge, o sus parientes dentro del cuarto grado de consanguinidad o segundo de afinidad.

3. El proceso penal garantiza, también, el ejercicio de los derechos de información y de participación procesal a la persona agraviada o perjudicada por el delito. La autoridad pública está obligada a velar por su protección y a brindarle un trato acorde con su condición.

**Artículo Xº.- Prevalencia de las normas de este Título.-** Las normas que integran el presente Título prevalecen sobre cualquier otra disposición de este Código. Serán utilizadas como fundamento de interpretación.

## LIBRO PRIMERO
## DISPOSICIONES GENERALES

### SECCIÓN I
### LA ACCIÓN PENAL

**Artículo 1º Acción penal.-** La acción penal es pública.

1. Su ejercicio en los delitos de persecución pública, corresponde al Ministerio Público. La ejercerá de oficio, a instancia del agraviado por el delito o por cualquier persona, natural o jurídica, mediante acción popular.

2. En los delitos de persecución privada corresponde ejercerla al directamente ofendido por el delito ante el órgano jurisdiccional competente. Se necesita la presentación de querella.

3. En los delitos que requieren la previa instancia del directamente ofendido por el delito, el ejercicio de la acción penal por el Ministerio Público está condicionado a la denuncia de la persona autorizada para hacerlo. No obstante ello, el Ministerio Público puede solicitar al titular de la instancia la autorización correspondiente.

4. Cuando corresponde la previa autorización del Congreso o de otro órgano público para el ejercicio de la acción penal, se observará el procedimiento previsto por la Ley para dejar expedita la promoción de la acción penal.

**Artículo 2º Principio de oportunidad.-**

1. El Ministerio Público, de oficio o a pedido del imputado y con su consentimiento, podrá abstenerse de ejercitar la acción penal en cualquiera de los siguientes casos:

a) Cuando el agente haya sido afectado gravemente por las consecuencias de su delito, culposo o doloso, siempre que este último sea reprimido con pena privativa de libertad no mayor de cuatro años, y la pena resulte innecesaria.

b) Cuando se trate de delitos que no afecten gravemente el interés público, salvo cuando el extremo mínimo de la pena sea superior a los dos años de pena privativa de libertad, o hubieren sido cometidos por un funcionario público en ejercicio de su cargo.

c) Cuando conforme a las circunstancias del hecho y a las condiciones personales del denunciado, el Fiscal puede apreciar que concurren los supuestos atenuantes de los artículos 14º, 15º, 16º, 21º, 22º y 25º del Código Penal, y se advierta que no existe ningún interés público gravemente comprometido en su persecución. No será posible cuando se trate de un delito conminado con una sanción superior a cuatro años de pena privativa de libertad o cometido por un funcionario público en el ejercicio de su cargo.

2. En los supuestos previstos en los incisos b) y c) del numeral anterior, será necesario que el agente hubiere reparado los daños y perjuicios ocasionados o exista acuerdo con el agraviado en ese sentido.

3. El Fiscal citará al imputado y al agraviado con el fin de realizar la diligencia de acuerdo, dejándose constancia en acta. En caso de inasistencia del agraviado, el Fiscal podrá determinar el monto de la reparación civil que corresponda. Si no se llega a un acuerdo sobre el plazo para el pago de la reparación civil, el Fiscal lo fijará sin que éste exceda de nueve meses. No será necesaria la referida diligencia si el imputado y la víctima llegan a un acuerdo y éste consta en instrumento público o documento privado legalizado notarialmente.

4. Realizada la diligencia prevista en el párrafo anterior y satisfecha la reparación civil, el Fiscal expedirá una Disposición de Abstención. Esta disposición impide, bajo sanción de nulidad, que otro Fiscal pueda promover u ordenar que se promueva acción penal por una denuncia que contenga los mismos hechos. De existir un plazo para el pago de la reparación civil, se suspenderán los efectos de dicha decisión hasta su efectivo cumplimiento. De no producirse el pago, se dictará Disposición para la promoción de la acción penal, la cual no será impugnable.

5. Si el Fiscal considera imprescindible, para suprimir el interés público en la persecución, sin oponerse a la gravedad de la responsabilidad, imponer adicionalmente el pago de un importe a favor de una institución de interés social del Estado y la aplicación de las reglas de conducta previstas en el artículo 64º del Código Penal, solicitará

**Pág. 273536  El Peruano  NORMAS LEGALES**  Lima, jueves 29 de julio de 2004

la aprobación de la abstención al Juez de la Investigación Preparatoria, el que la resolverá previa audiencia de los interesados. Son aplicables las disposiciones del numeral 4) del presente artículo.

**6.** Independientemente de los casos establecidos en el numeral 1) procederá un acuerdo reparatorio en los delitos previstos y sancionados en los artículos 122º, 185º, 187º, 189-A Primer Párrafo, 190º, 191º, 192º, 193º, 196º, 197º, 198º, 205º, 215º del Código Penal, y en los delitos culposos. No rige esta regla cuando haya pluralidad importante de víctimas o concurso con otro delito, salvo que, en este último caso, sea de menor gravedad o que afecte bienes jurídicos disponibles.

El Fiscal de oficio o a pedido del imputado o de la víctima propondrá un acuerdo reparatorio. Si ambos convienen el mismo, el Fiscal se abstendrá de ejercitar la acción penal. Si el imputado no concurre a la segunda citación o se ignora su domicilio o paradero, el Fiscal promoverá la acción penal. Rige en lo pertinente el numeral 3).

**7.** Si la acción penal hubiera sido promovida, el Juez de la Investigación Preparatoria, previa audiencia, podrá a petición del Ministerio Público, con la aprobación del imputado y citación del agraviado, dictar auto de sobreseimiento –con o sin las reglas fijadas en el numeral 5)– hasta antes de formularse la acusación, bajo los supuestos ya establecidos. Esta resolución no será impugnable, salvo en cuanto al monto de la reparación civil si ésta es fijada por el Juez ante la inexistencia de acuerdo entre el imputado y la víctima, o respecto a las reglas impuestas si éstas son desproporcionadas y afectan irrazonablemente la situación jurídica del imputado.

Tratándose de los supuestos previstos en el numeral 6), basta la presentación del acuerdo reparatorio en un instrumento público o documento privado legalizado notarialmente, para que el Juez dicte auto de sobreseimiento.

**Artículo 3º Comunicación al Juez de la continuación de la investigación.-** El Ministerio Público comunicará al Juez de la Investigación Preparatoria su decisión formal de continuar con las investigaciones preparatorias.

**Artículo 4º Cuestión previa.-**

**1.** La cuestión previa procede cuando el Fiscal decide continuar con la Investigación Preparatoria omitiendo un requisito de procedibilidad explícitamente previsto en la Ley. Si el órgano jurisdiccional la declara fundada se anulará lo actuado.

**2.** La Investigación Preparatoria podrá reiniciarse luego que el requisito omitido sea satisfecho.

**Artículo 5º Cuestión prejudicial.-**

**1.** La cuestión prejudicial procede cuando el Fiscal decide continuar con la Investigación Preparatoria, pese a que fuere necesaria en vía extra – penal una declaración vinculada al carácter delictuoso del hecho incriminado.

**2.** Si se declara fundada, la Investigación Preparatoria se suspende hasta que en la otra vía recaiga resolución firme. Esta decisión beneficia a todos los imputados que se encuentren en igual situación jurídica y que no la hubieren declarado.

**3.** En caso de que el proceso extra – penal no haya sido promovido por la persona legitimada para hacerlo, se le notificará y requerirá para que lo haga en el plazo de treinta días computados desde el momento en que haya quedado firme la resolución suspensiva. Si vencido dicho plazo no cumpliera con hacerlo, el Fiscal Provincial en lo Civil, siempre que se trate de un hecho punible perseguible por ejercicio público de la acción penal, deberá promoverlo con citación de las partes interesadas. En uno u otro caso, el Fiscal está autorizado para intervenir y continuar el proceso hasta su terminación, así como sustituir al titular de la acción si éste no lo prosigue.

**4.** De lo resuelto en la vía extra – penal depende la prosecución o el sobreseimiento definitivo de la causa.

**Artículo 6º Excepciones.-**

**1.** Las excepciones que pueden deducirse son las siguientes:

a) Naturaleza de juicio, cuando se ha dado al proceso una sustanciación distinta a la prevista en la Ley.

b) Improcedencia de acción, cuando el hecho no constituye delito o no es justiciable penalmente.

c) Cosa juzgada, cuando el hecho punible ha sido objeto de una resolución firme, nacional o extranjera contra la misma persona.

d) Amnistía.

e) Prescripción, cuando por el vencimiento de los plazos señalados en el Código Penal se haya extinguido la acción penal o el derecho de ejecución de la pena.

**2.** En caso que se declare fundada la excepción de naturaleza de juicio, el proceso se adecuará al trámite reconocido en el auto que la resuelva. Si se declara fundada cualquiera de las excepciones previstas en los cuatro últimos literales, el proceso será sobreseído definitivamente.

**Artículo 7º Oportunidad de los medios de defensa.-**

**1.** La cuestión previa, cuestión prejudicial y las excepciones se plantean una vez que el Fiscal haya decidido continuar con las investigaciones preparatorias o al contestar la querella ante el Juez y se resolverán necesariamente antes de culminar la Etapa Intermedia.

**2.** La cuestión previa y las excepciones también se pueden deducir durante la Etapa Intermedia, en la oportunidad fijada por la Ley.

**3.** Los medios de defensa referidos en este dispositivo, pueden ser declarados de oficio.

**Artículo 8º Trámite de los medios de defensa.-**

**1.** La cuestión previa, cuestión prejudicial y las excepciones que se deduzcan durante la Investigación Preparatoria serán planteadas mediante solicitud debidamente fundamentada ante el Juez de la Investigación Preparatoria que recibió la comunicación señalada en el artículo 3º, adjuntando, de ser el caso, los elementos de convicción que correspondan.

**2.** El Juez de la Investigación Preparatoria, una vez que ha recabado información del Fiscal acerca de los sujetos procesales apersonados en la causa y luego de notificarles la admisión del medio de defensa deducido, dentro del tercer día señalará fecha para la realización de la audiencia, la que se realizará con quienes concurran a la misma. El Fiscal asistirá obligatoriamente y exhibirá el expediente fiscal para su examen inmediato por el Juez en ese acto.

**3.** Instalada la audiencia, el Juez de la Investigación Preparatoria escuchará por su orden, al abogado defensor que propuso el medio de defensa, al Fiscal, al defensor del actor civil y al defensor de la persona jurídica según lo dispuesto en el artículo 90º y del tercero civil. En el turno que les corresponde, los participantes harán mención a los elementos de convicción que consten en autos o que han acompañado en sede judicial. Si asiste el imputado tiene derecho a intervenir en último término.

**4.** El Juez de la Investigación Preparatoria resolverá inmediatamente o, en todo caso, en el plazo de dos días luego de celebrada la vista. Excepcionalmente, y hasta por veinticuatro horas, podrá retener el expediente fiscal para resolver el medio de defensa deducido, que se hará mediante auto debidamente fundamentado.

**5.** Cuando el medio de defensa se deduce durante la Etapa Intermedia, en la oportunidad fijada en el artículo 350º, se resolverán conforme a lo dispuesto en el artículo 352º.

**6.** La cuestión previa, cuestión prejudicial y las excepciones deducidas a favor de uno de los imputados beneficia a los demás, siempre que se encuentren en igual situación jurídica.

**Artículo 9º Recurso de Apelación.-**

**1.** Contra el auto expedido por el Juez de la Investigación Preparatoria procede recurso de apelación.

**2.** Concedido el recurso de apelación, el Juez de la Investigación Preparatoria dispondrá, antes de la elevación del recurso a la Sala Penal Superior, que dentro del quinto día se agreguen a los actuados formados en sede judicial las copias certificadas pertinentes del expediente fiscal. Si transcurre el plazo sin que se haya agregado las copias correspondientes, el Juez inmediatamente elevará los ac-

tuadas a la Sala Penal Superior, la que sin perjuicio de poner este hecho en conocimiento del Fiscal Superior instará al Fiscal Provincial para que complete el cuaderno de apelación.

**Artículo 10º Indicios de delitos en proceso extra – penal.-**

1. Cuando en la sustanciación de un proceso extra – penal aparezcan indicios de la comisión de un delito de persecución pública, el Juez, de oficio o a pedido de parte, comunicará al Ministerio Público para los fines consiguientes.

2. Si el Fiscal luego de las primeras diligencias decide continuar con la Investigación Preparatoria lo comunicará al Juez extra penal, quien suspenderá el proceso, siempre que considere que la sentencia penal puede influir en la resolución que le corresponde dictar.

**SECCIÓN II
LA ACCIÓN CIVIL**

**Artículo 11º Ejercicio y contenido.-**

1. El ejercicio de la acción civil derivada del hecho punible corresponde al Ministerio Público y, especialmente, al perjudicado por el delito. Si el perjudicado se constituye en actor civil, cesa la legitimación del Ministerio Público para intervenir en el objeto civil del proceso.

2. Su ámbito comprende las acciones establecidas en el artículo 93º del Código Penal e incluye, para garantizar la restitución del bien y, siempre que sea posible, la declaración de nulidad de los actos jurídicos que correspondan, con citación de los afectados.

**Artículo 12º Ejercicio alternativo y accesoriedad.-**

1. El perjudicado por el delito podrá ejercer la acción civil en el proceso penal o ante el Orden Jurisdiccional Civil. Pero una vez que se opta por una de ellas, no podrá deducirla en la otra vía jurisdiccional.

2. Si la persecución penal no pudiese proseguir, ya sea que se disponga la reserva del proceso o se suspenda por alguna consideración legal, la acción civil derivada del hecho punible podrá ser ejercida ante el Orden Jurisdiccional Civil.

3. La sentencia absolutoria o el auto de sobreseimiento no impedirá al órgano jurisdiccional pronunciarse sobre la acción civil derivada del hecho punible válidamente ejercida, cuando proceda.

**Artículo 13º Desistimiento.-**

1. El actor civil podrá desistirse de su pretensión de reparación civil hasta antes del inicio de la Etapa Intermedia del proceso. Ello no perjudica su derecho a ejercerlo en la vía del proceso civil.

2. El desistimiento genera la obligación del pago de costas.

**Artículo 14º Transacción.-**

1. La acción civil derivada del hecho punible podrá ser objeto de transacción.

2. Una vez que la transacción se formalice ante el Juez de la Investigación Preparatoria, respecto de la cual no se permite oposición del Ministerio Público, el Fiscal se abstendrá de solicitar reparación civil en su acusación.

**Artículo 15º Nulidad de transferencias.-**

1. El Ministerio Público o el actor civil, según los casos, cuando corresponda aplicar lo dispuesto en el artículo 97º del Código Penal o cuando se trate de bienes sujetos a decomiso de conformidad con el artículo 102º del citado Código, que hubieran sido transferidos o gravados fraudulentamente, sin perjuicio de la anotación preventiva y/o de otra medida que corresponda, solicitarán en el mismo proceso penal la nulidad de dicha transferencia o gravamen recaído sobre el bien.

2. El procedimiento se sujetará a las siguientes reglas:

**a)** Una vez identificada una transferencia de un bien sujeto a decomiso o que puede responder a la reparación civil y que se considere incurso en lo dispuesto en el primer numeral del presente artículo, el Ministerio Público y el actor civil, introducirán motivadamente la pretensión anulatoria correspondiente e instará al Juez de la Investigación Preparatoria que disponga al Fiscal la formación del cuaderno de nulidad de transferencia. En ese mismo escrito ofrecerá la prueba pertinente.

**b)** El Juez correrá traslado del requerimiento de nulidad al imputado, al adquirente y/o poseedor del bien cuestionado o a aquél en cuyo favor se gravó el bien, para que dentro del quinto día de notificados se pronuncien acerca del petitorio de nulidad. Los emplazados, conjuntamente con su contestación, ofrecerán la prueba que consideren conveniente.

**c)** El Juez, absuelto el trámite o transcurrido el plazo respectivo, de ser el caso, citará a una audiencia dentro del quinto día para la actuación de las pruebas ofrecidas y escuchar los alegatos de los participantes. A su culminación, con las conclusiones escritas de las partes, el Juez dictará resolución dando por concluido el procedimiento incidental. Están legitimados a intervenir en la actuación probatoria las partes y las personas indicadas en el numeral anterior.

**d)** El órgano jurisdiccional competente para dictar sentencia se pronunciará sobre la nulidad demandada. Todos los legitimados para intervenir en este incidente pueden participar en todas las actuaciones procesales que puedan afectar su derecho y, especialmente, en el juicio oral, en que podrán formular alegatos escritos y orales. En este último caso intervendrán luego del tercero civil.

**e)** Esta pretensión también puede interponerse durante la Etapa Intermedia, en el momento fijado por la Ley.

**SECCIÓN III
LA JURISDICCIÓN Y COMPETENCIA.**

**TÍTULO I
LA JURISDICCIÓN**

**Artículo 16º Potestad jurisdiccional.-** La potestad jurisdiccional del Estado en materia penal se ejerce por:

1. La Sala Penal de la Corte Suprema.
2. Las Salas Penales de las Cortes Superiores.
3. Los Juzgados Penales, constituidos en órganos colegiados o unipersonales, según la competencia que le asigna la Ley.
4. Los Juzgados de la Investigación Preparatoria.
5. Los Juzgados de Paz Letrados, con las excepciones previstas por la Ley para los Juzgados de Paz.

**Artículo 17º Improrrogabilidad de la jurisdicción penal.-** La jurisdicción penal ordinaria es improrrogable. Se extiende a los delitos y a las faltas. Tiene lugar según los criterios de aplicación establecidos en el Código Penal y en los Tratados Internacionales celebrados por el Estado, debidamente aprobados y ratificados conforme a la Constitución.

**Artículo 18º Límites de la jurisdicción penal ordinaria.-** La jurisdicción penal ordinaria no es competente para conocer:

1. De los delitos previstos en el artículo 173º de la Constitución.
2. De los hechos punibles cometidos por adolescentes.
3. De los hechos punibles en los casos previstos en el artículo 149º de la Constitución.

**TÍTULO II
LA COMPETENCIA**

**Artículo 19º Determinación de la competencia.-**

1. La competencia es objetiva, funcional, territorial y por conexión.
2. Por la competencia se precisa e identifica a los órganos jurisdiccionales que deben conocer un proceso.

**Artículo 20º** Efectos de las cuestiones de competencia.- Las cuestiones de competencia no suspenderán el procedimiento. No obstante, si se producen antes de dictarse el auto de citación de juicio, se suspenderá la audiencia hasta la decisión del conflicto.

### CAPÍTULO I
### LA COMPETENCIA POR EL TERRITORIO

**Artículo 21º** Competencia territorial.- La competencia por razón del territorio se establece en el siguiente orden:

1. Por el lugar donde se cometió el hecho delictuoso o se realizó el último acto en caso de tentativa, o cesó la continuidad o la permanencia del delito.
2. Por el lugar donde se produjeron los efectos del delito.
3. Por el lugar donde se descubrieron las pruebas materiales del delito.
4. Por el lugar donde fue detenido el imputado.
5. Por el lugar donde domicilia el imputado.

**Artículo 22º** Delitos cometidos en un medio de transporte.-

1. Si el delito es cometido en un medio de transporte sin que sea posible determinar con precisión la competencia territorial, corresponde conocer al Juez del lugar de llegada más próximo. En este caso el conductor del medio de transporte pondrá el hecho en conocimiento de la autoridad policial del lugar indicado.
2. La autoridad policial informará de inmediato al Fiscal Provincial para que proceda con arreglo a sus atribuciones.

**Artículo 23º** Delito cometido en el extranjero.- Si el delito es cometido fuera del territorio nacional y debe ser juzgado en el Perú conforme al Código Penal, la competencia del Juez se establece en el siguiente orden:

1. Por el lugar donde el imputado tuvo su último domicilio en el país;
2. Por el lugar de llegada del extranjero;
3. Por el lugar donde se encuentre el imputado al momento de promoverse la acción penal.

**Artículo 24º** Delitos graves y de trascendencia nacional.- Los delitos especialmente graves, o los que produzcan repercusión nacional o que sus efectos superen el ámbito de un Distrito Judicial, o los cometidos por organizaciones delictivas, que la Ley establezca, podrán ser conocidos por determinados jueces de la jurisdicción penal ordinaria, bajo un sistema específico de organización territorial y funcional, que determine el Órgano de Gobierno del Poder Judicial.

**Artículo 25º** Valor de los actos procesales ya realizados.- La incompetencia territorial no acarrea la nulidad de los actos procesales ya realizados.

### CAPÍTULO II
### LA COMPETENCIA OBJETIVA Y FUNCIONAL

**Artículo 26º** Competencia de la Sala Penal de la Corte Suprema.- Compete a la Sala Penal de la Corte Suprema:

1. Conocer del recurso de casación interpuesto contra las sentencias y autos expedidos en segunda instancia por las Salas Penales de las Cortes Superiores, en los casos previstos por la Ley.
2. Conocer del recurso de queja por denegatoria de apelación.
3. Transferir la competencia en los casos previstos por la Ley.
4. Conocer de la acción de revisión.
5. Resolver las cuestiones de competencia previstas en la Ley, y entre la jurisdicción ordinaria y la militar.
6. Pedir al Poder Ejecutivo que acceda a la extradición activa y emitir resolución consultiva respecto a la procedencia o improcedencia de la extradición pasiva.

7. Resolver la recusación planteada contra sus Magistrados.
8. Juzgar en los casos de delitos de función que señala la Constitución.
9. Entender de los demás casos que este Código y las Leyes determinan.

**Artículo 27º** Competencia de las Salas Penales de las Cortes Superiores.- Compete a las Salas Penales de las Cortes Superiores:

1. Conocer del recurso de apelación contra los autos y las sentencias en los casos previstos por la Ley, expedidos por los Jueces de la Investigación Preparatoria y los Jueces Penales –colegiados o unipersonales-.
2. Dirimir las contiendas de competencia de los Jueces de la Investigación Preparatoria y los Jueces Penales –colegiados o unipersonales- del mismo o distinto Distrito Judicial, correspondiendo conocer y decidir, en este último caso, a la Sala Penal del Distrito Judicial al que pertenezca el Juez que previno.
3. Resolver los incidentes que se promuevan en su instancia.
4. Dictar, a pedido del Fiscal Superior, las medidas limitativas de derechos a que hubiere lugar.
5. Conocer del recurso de queja en los casos previstos por la Ley.
6. Designar al Vocal menos antiguo de la Sala para que actúe como Juez de la Investigación Preparatoria en los casos previstos por la Ley, y realizar el juzgamiento en dichos casos.
7. Resolver la recusación planteada contra sus Magistrados.
8. Conocer los demás casos que este Código y las Leyes determinen.

**Artículo 28º** Competencia material y funcional de los Juzgados Penales.-

1. Los Juzgados Penales Colegiados, integrados por tres jueces, conocerán materialmente de los delitos que tengan señalados en la Ley, en su extremo mínimo, una pena privativa de libertad mayor de seis años.
2. Los Juzgados Penales Unipersonales conocerán materialmente de aquellos cuyo conocimiento no se atribuya a los Juzgados Penales Colegiados.
3. Compete funcionalmente a los Juzgados Penales, Unipersonales o Colegiados, lo siguiente:

a) Dirigir la etapa de juzgamiento en los procesos que conforme a Ley deban conocer;
b) Resolver los incidentes que se promuevan durante el curso del juzgamiento;
c) Conocer de los demás casos que este Código y las Leyes determinen.

4. Los Juzgados Penales Colegiados, funcionalmente, también conocerán de las solicitudes sobre refundición o acumulación de penas;
5. Los Juzgados Penales Unipersonales, funcionalmente, también conocerán:

a) De los incidentes sobre beneficios penitenciarios, conforme a lo dispuesto en el Código de Ejecución Penal;
b) Del recurso de apelación interpuesto contra las sentencias expedidas por el Juez de Paz Letrado;
c) Del recurso de queja en los casos previstos por la Ley;
d) De la dirimencia de las cuestiones de competencia entre los Jueces de Paz Letrados.

**Artículo 29º** Competencia de los Juzgados de la Investigación Preparatoria.- Compete a los Juzgados de la Investigación Preparatoria:

1. Conocer las cuestiones derivadas de la constitución de las partes durante la Investigación Preparatoria.
2. Imponer, modificar o hacer cesar las medidas limitativas de derechos durante la Investigación Preparatoria.
3. Realizar el procedimiento para la actuación de prueba anticipada.
4. Conducir la Etapa Intermedia y la ejecución de la sentencia.

**5.** Ejercer los actos de control que estipula este Código.

**6.** Ordenar, en caso de delito con resultado de muerte, si no se hubiera inscrito la defunción, y siempre que se hubiera identificado el cadáver, la correspondiente inscripción en el Registro Nacional de Identificación y Estado Civil.

**7.** Conocer de los demás casos que este Código y las Leyes determinen.

**Artículo 30º Competencia de los Juzgados de Paz Letrados.-** Compete a los Juzgados de Paz Letrados conocer de los procesos por faltas.

### CAPÍTULO III
### LA COMPETENCIA POR CONEXIÓN

**Artículo 31º Conexión procesal.-** Existe conexión de procesos en los siguientes casos:

**1.** Cuando se imputa a una persona la comisión de varios delitos.
**2.** Cuando varias personas aparezcan como autores o partícipes del mismo hecho punible.
**3.** Cuando varias personas vinculadas por una misma voluntad criminal hayan cometido diversos hechos punibles en tiempo y lugar diferentes.
**4.** Cuando el hecho delictuoso ha sido cometido para facilitar otro delito o para asegurar la impunidad.
**5.** Cuando se trate de imputaciones recíprocas.

**Artículo 32º Competencia por conexión.-** En los supuestos de conexión previstos en el artículo 31º, la competencia se determinará:

**1.** En el numeral 1), le corresponde al Juez que conoce del delito con pena más grave. A igual gravedad, corresponde al Juez que primero recibió la comunicación prevista en el artículo 3º.
**2.** En el numeral 2), la competencia se determinará subsidiariamente por la fecha de comisión del delito, por el turno en el momento de la comunicación prevista en el numeral 3) o por quien tuviera el proceso más avanzado. En caso de procesos incoados en distintos distritos judiciales, la competencia se establece por razón del territorio.
**3.** En los numerales 3) y 5), corresponde al que conoce el delito con pena más grave. A igual gravedad compete al Juez Penal que primero hubiera recibido la comunicación prevista en el numeral 3).
**4.** En el numeral 4) corresponderá al que conoce del delito con pena más grave.

### TÍTULO III
### CONCURSO PROCESAL DE DELITOS

**Artículo 33º Trámite.-**

**1.** En caso de concurso de delitos sujetos a distintos trámites procesales, el procedimiento se seguirá de acuerdo al que corresponde al delito con pena más grave.
**2.** Los procesos por delitos de acción privada seguirán las mismas reglas, pero la acumulación sólo procederá entre ellas.

### TÍTULO IV
### CUESTIONES DE COMPETENCIA

### CAPÍTULO I
### LA DECLINATORIA DE COMPETENCIA

**Artículo 34º Declinatoria de competencia.-**

**1.** Durante la Investigación Preparatoria el imputado, el actor civil o el tercero civil podrán pedir declinatoria de competencia.
**2.** La petición procede cuando el Juez se avoca al conocimiento de un delito que no le corresponde por razón de la materia, de jerarquía o de territorio. El Juez la resolverá, de conformidad con el trámite previsto —en lo pertinente- en el artículo 8º *in fine*, mediante resolución fundamentada.

**Artículo 35º Oportunidad para la petición de declinatoria.-** La petición de declinatoria de competencia se interpondrá dentro de los diez días de formalizada la investigación.

**Artículo 36º Remisión del proceso.-** Consentida la resolución que la declara fundada, el proceso será remitido a quien corresponda, con conocimiento de las partes.

**Artículo 37º Recurso de apelación.-** Contra la resolución a que se refiere el artículo 34º procede apelación ante la Sala Penal Superior, que la resolverá en última instancia.

**Artículo 38º Valor de los actos procesales.-** Los actos procesales válidamente realizados antes de la declinatoria conservan su eficacia.

### CAPÍTULO II
### LA TRANSFERENCIA DE COMPETENCIA

**Artículo 39º Procedencia.-** La transferencia de competencia se dispone únicamente cuando circunstancias insalvables impidan o perturben gravemente el normal desarrollo de la investigación o del juzgamiento, o cuando sea real o inminente el peligro incontrolable contra la seguridad del procesado o su salud, o cuando sea afectado gravemente el orden público.

**Artículo 40º Trámite.-**

**1.** La transferencia podrá solicitarla el Fiscal, el imputado, y las demás partes puntualizando los fundamentos y adjuntando la prueba. Formado el incidente se pondrá en conocimiento de los demás sujetos procesales, quienes en el término de cinco días, expondrán lo conveniente. Vencido el plazo será elevado el incidente.
**2.** La Sala resolverá en el plazo de tres días.

**Artículo 41º Resolución.-**

**1.** La transferencia de competencia del Juez dentro del mismo Distrito Judicial, será resuelta por la Sala Penal Superior.
**2.** Cuando se trate del Juez de distinto Distrito Judicial, o de la Sala Penal Superior, la resolverá la Sala Suprema.

### CAPÍTULO III
### LA CONTIENDA DE COMPETENCIA

**Artículo 42º Contienda de competencia por requerimiento.-**

**1.** Cuando el Juez toma conocimiento que otro de igual jerarquía también conoce del mismo caso sin que le corresponda, de oficio o a petición de las partes, solicitará la remisión del proceso. Además de la copia de la resolución, adjuntará los elementos de juicio pertinentes.
**2.** El Juez requerido resolverá en el término de dos días hábiles. Si acepta, remitirá lo actuado, con conocimiento de las partes. Si declara improcedente la remisión formará el cuaderno respectivo y lo elevará en el término de tres días a la Sala Penal Superior, para que resuelva en última instancia dentro del quinto día de recibidos los autos.

**Artículo 43º Contienda de competencia por inhibición.-**

**1.** Cuando el Juez se inhibe, de oficio o a instancia de las partes, remitirá copia de las piezas pertinentes a otro Juez si hubiera detenido; en caso contrario remitirá el proceso.
**2.** Si el segundo Juez también se inhibe elevará las copias en el plazo de un día hábil, o el principal, para que la Sala Penal Superior resuelva.

**Artículo 44º Consulta del Juez.-**

**1.** Cuando el Juez tome conocimiento que su superior jerárquico conoce el mismo hecho punible o uno conexo consultará mediante oficio si debe remitir lo actuado.